[No. S117568. Feb. 3, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID V. CARSON, Defendant and Appellant.

COUNSEL

Chris R. Redburn, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz, Donald E. De Nicola, William T. Harter and Xiomara Costello, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROWN, J.—** ■ We granted review in this case to determine whether a trial court may terminate or revoke a criminal defendant's right of self-representation only for in-court misconduct. (See *Ferrel v. Superior Court* (1978) 20 Cal.3d 888, 891 [144 Cal.Rptr. 610, 576 P.2d 93] (*Ferrel*).) We conclude that neither the language nor the logic of *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] (*Faretta*) imposes such a limitation. Regardless of where it occurs, a court may order termination for misconduct that seriously threatens the core integrity of the trial.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant David V. Carson was charged with murder (Pen. Code, § 187), mayhem (*id.*, § 203), and aggravated assault (*id.*, § 245, subd. (a)(1)) as well as various enhancement allegations. Counsel was appointed and represented him through the preliminary hearing. Well before the scheduled trial date, defendant made a motion to represent himself. After determining the waiver of counsel was knowing and voluntary (see *Faretta*, *supra*, 422 U.S. at p. 835), the trial court granted the motion. Several months later, however, the court terminated defendant's in propria persona status based on out-of-court conduct relating to discovery matters. Standby counsel assumed representation, and the case proceeded to trial. A jury convicted defendant on all counts and found true the enhancement allegations.

The Court of Appeal reversed the conviction. Relying in part on *Ferrel*, *supra*, 20 Cal.3d 888, it concluded defendant "engaged in no disruptive or obstructive conduct," and therefore the trial court abused its discretion in terminating his right of self-representation. Nevertheless, the court questioned the analytical soundness of certain language in *Ferrel*: "Although this does not appear the case to do so, we suggest our Supreme Court, in a proper case, revisit *Ferrel*, *supra*, 20 Cal.3d 888, and reexamine the issue of when a trial

court may terminate the defendant's right of self-representation. (See, e.g., *United States v. Dougherty* (D.C. Cir. 1972) 154 U.S. App. D.C. 76 [473 F.2d 1113, 1124–1126] [courts may appoint standby counsel to represent defendant who is representing himself if the defendant begins to subvert the core concept of a trial].) *Dougherty* was one of the two cases cited by Justice Stewart in *Faretta*'s brief discussion of the trial court's authority to terminate the right of a defendant to represent himself when he engages in obstructionist conduct. (See *Faretta, supra,* 422 U.S. at pp. 834–835, fn. 46.) Although far from unambiguous, we believe that this reference suggests the *Faretta* court intended to embrace *Dougherty*'s standard for termination of the right of self-representation: does the defendant's misconduct seriously threaten the core integrity of the trial? Termination of the right of self-representation is a severe sanction and must not be imposed lightly. Nonetheless, we believe trial courts should be given sufficient discretion when confronted with behavior— whether occurring in court or out of court—that threatens to compromise the court's ability to conduct a fair trial. (Cf. *Illinois v. Allen* [(1970)] 397 U.S. [337,] 343 [25 L.Ed.2d 353, 90 S.Ct. 1057].)"

At respondent Attorney General's behest, we accepted this invitation and granted review to reconsider whether the authority to terminate a defendant's right of self-representation is limited to in-court misconduct.

## DISCUSSION

### I.

In *Ferrel*, the trial court terminated the defendant's right of self-representation after his "repeated violation of jail rules involving abuse of his pro. per. privileges" (*Ferrel, supra,* 20 Cal.3d at p. 891), principally using his legal runner to pass illegal gambling proceeds out of the jail and damaging a jail telephone. In addressing the propriety of the court's ruling, we acknowledged that "[l]imitations on or suspension of a defendant's pro. per. privileges, whether or not such privileges may initially be required, may be necessary in certain circumstances as a result of a defendant's misconduct in jail." (*Id.* at p. 892, fn. omitted.) With respect to in propria persona status, however, we stated, "Since it is manifest that the right to present a defense must necessarily be exercised in court, we conclude that an accused should only be deprived of that right when he engages in disruptive in-court conduct which is inconsistent with its proper exercise." (*Id.* at p. 891.)

On its facts, the ultimate conclusion in *Ferrel* was correct. The defendant's misconduct was unrelated to and independent of the underlying prosecution and thus presented no danger of impairing the integrity of the trial. Because the acts in *Ferrel* did not threaten to obstruct the proceedings, the trial court

had plainly abused its discretion in revoking the defendant's in propria persona status. Now that we confront misconduct that might compromise the fairness of the trial, however, we deem it prudent to reconsider the breadth of our holding in *Ferrel*, which appears to sanction termination of *Faretta* rights only for "disruptive in-court conduct." (*Ferrel, supra,* 20 Cal.3d at p. 891.) Having reexamined our conclusion, we find it unsupported by either the language or logic of *Faretta*. Moreover, it unnecessarily restricts the trial court's authority to respond to misconduct occurring outside the courtroom that can equally threaten to obstruct the trial proceedings.

The fundamental question before the Supreme Court in *Faretta* was "whether a defendant in a state criminal trial has a constitutional right to proceed [to trial] *without* counsel when he voluntarily and intelligently elects to do so." (*Faretta, supra,* 422 U.S. at p. 807.) The opinion thus understandably contains scant reference to the circumstances that would justify termination of the right of self-representation. In a footnote, the court noted:

■ "We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and by most of the States, and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. See *Illinois* v. *Allen*, [*supra*,] 397 U.S. 337. Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. See *United States* v. *Dougherty* [(1972)] 154 U.S. App. D. C. 76, 87–89, 473 F.2d 1113, 1124–1126.

■ "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " (*Faretta, supra,* 422 U.S. at p. 834, fn. 46, 95 S.Ct. 2525.)

■ Nothing in this passage implies any intent to limit "serious and obstructionist misconduct" to the courtroom. (Cf. *State v. Whalen* (1997) 192 Ariz. 103 & fn. 5 [961 P.2d 1051, 1055].) The citation to *Illinois v. Allen*, *supra*, 397 U.S. 337, does not suggest otherwise. In that case, the defendant was represented by counsel and became obstreperous during the trial. In answering the question whether his removal violated constitutional

guarantees, the high court held that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful to the court that his trial cannot be carried on with him in the courtroom." (*Id.* at p. 343.) With respect to *Faretta* rights, this holding means simply that to the extent a defendant represented by counsel may be removed from the courtroom for disruptive behavior, so too may an in propria persona defendant: "The right of self-representation is not a license to abuse the dignity of the courtroom." (*Faretta, supra,* 422 U.S. at p. 834, fn. 46.) Because *Allen* was not a case of self-representation, however, it is not authority for the conclusion that only in-court misconduct will justify terminating that right. (See *People v. Nguyen* (2000) 22 Cal.4th 872, 879 [95 Cal.Rptr.2d 178, 997 P.2d 493].)

▮ Although the trial is the central event in a criminal prosecution, it represents the culmination of many weeks or months of preparation and related proceedings, such as discovery matters and in limine rulings. Not all these pretrial activities will take place in court. Concomitantly, opportunities to abuse the right of self-representation and engage in obstructionist conduct are not restricted to the courtroom. (See *United States v. Flewitt* (9th Cir. 1989) 874 F.2d 669, 674.) In other words, the "relevant rules of procedural and substantive law" (*Faretta, supra,* 422 U.S. at p. 834, fn. 46) are not limited to those relating solely to the trial itself. (Cf. *McKaskle v. Wiggins* (1984) 465 U.S. 168, 173 [79 L.Ed.2d 122, 104 S.Ct. 944]; *People v. Rudd* (1998) 63 Cal.App.4th 620, 632 [73 Cal.Rptr.2d 807].) Ultimately, the effect, not the location, of the misconduct and its impact on the core integrity of the trial will determine whether termination is warranted.

▮ One form of serious and obstructionist misconduct is witness intimidation, which by its very nature compromises the factfinding process and constitutes a quintessential "subversion of the core concept of a trial." (*United States v. Dougherty, supra,* 473 F.2d at p. 1125.) "A defendant acting as his own attorney has no greater privileges than any member of the bar. He may not disrupt proceedings or intimidate witnesses. [Citations.] . . . The trial court can stop harassment and abuse of a witness by a threatening defendant and can terminate self-representation by a defendant who engages in serious misconduct. [Citations.]" (*State v. Jessup* (Wash.Ct.App. 1982) 31 Wn.App. 304 [641 P.2d 1185, 1190].) Threatening or intimidating acts are not limited to the courtroom. (Cf. *Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, 1149, fn. 15 [99 Cal.Rptr.2d 149, 5 P.3d 203] [describing severe problem of witness intimidation by prison gangs].) When a defendant exploits or manipulates his in propria persona status to engage in such acts, wherever they may occur, the trial court does not abuse its discretion in determining he has forfeited the right of continued self-representation.

■ In citing this example, we do not suggest witness intimidation is the only type of serious and obstructionist out-of-court misconduct that may warrant termination of self-representation. (See, e.g., *People v. Rudd, supra*, 63 Cal.App.4th at p. 633; cf. *Illinois v. Allen, supra*, 397 U.S. at pp. 343–344.) Whenever "deliberate dilatory or obstructive behavior" threatens to subvert "the core concept of a trial" (*United States v. Dougherty, supra*, 473 F.2d at p. 1125) or to compromise the court's ability to conduct a fair trial (see *Allen*, at p. 343), the defendant's *Faretta* rights are subject to forfeiture. Each case must be evaluated in its own context, on its own facts, in light of the considerations discussed below.

■ When determining whether termination is necessary and appropriate, the trial court should consider several factors in addition to the nature of the misconduct and its impact on the trial proceedings. One consideration is the availability and suitability of alternative sanctions. (Cf. *Illinois v. Allen, supra*, 397 U.S. at pp. 343–344.) Misconduct that is more removed from the trial proceedings, more subject to rectification or correction, or otherwise less likely to affect the fairness of the trial may not justify complete withdrawal of the defendant's right of self-representation. (See, e.g., *United States v. Brock* (7th Cir. 1998) 159 F.3d 1077, 1080–1081; *United States v. Flewitt, supra*, 874 F.2d at pp. 673–675; *State v. Whalen, supra*, 961 P.2d at pp. 1055–1056; *State v. Jessup, supra*, 641 P.2d at p. 1190; see also *Ferrel, supra*, 20 Cal.3d at p. 892.) The court should also consider whether the defendant has been warned that particular misconduct will result in termination of in propria persona status. (See *Whalen*, at p. 1057; cf. *Allen*, at p. 343.) Not every obstructive act will be so flagrant and inconsistent with the integrity and fairness of the trial that immediate termination is appropriate. By the same token, however, the defendant's acts need not result in a disruption of the trial—for example, by successfully dissuading a witness from testifying. The likely, not the actual, effect of the misconduct should be the primary consideration.

■ Additionally, the trial court may assess whether the defendant has "intentionally sought to disrupt and delay his trial." (*People v. Clark* (1992) 3 Cal.4th 41, 117 [10 Cal.Rptr.2d 554, 833 P.2d 561]; see *State v. Whalen, supra*, 961 P.2d at p. 1055.) In many instances, such a purpose will suffice to order termination; but we do not hold that an intent to disrupt is a necessary condition. For example, in *Whalen*, the defendant refused to cross the bar during court proceedings on the belief that doing so "would waive jurisdictional objections." (*Whalen*, at p. 1054.) Although noting that some in propria persona defendants deliberately engage in obstreperous behavior to "make . . . orderly proceeding[s] impossible" (*id.* at p. 1055), the reviewing court upheld the termination of defendant Whalen's self-representation because his refusal to conduct his defense from the front of the courtroom

obstructed the court process. (*Id.* at p. 1056.) Ultimately, the relevance inheres in the effect of the misconduct on the trial proceedings, not the defendant's purpose.

██ In a case of in-court misconduct, the record documenting the basis for terminating a defendant's *Faretta* rights is generally complete and explicit, without the need for further explanatory proceedings, because there is a contemporaneous memorialization either by the court reporter's recording events as they transpire in the courtroom or by the trial court's describing them for the record. (See, e.g., *People v. Clark, supra,* 3 Cal.4th at pp. 113–117; *People v. Fitzpatrick* (1998) 66 Cal.App.4th 86, 90–91 [77 Cal.Rptr.2d 634].) With out-of-court misconduct, however, such is rarely the case, as the present facts illustrate. Since, at the very least, it is necessary to preserve a chronology of relevant events for possible appellate review, it is incumbent on the trial court to document its decision to terminate self-representation with some evidence reasonably supporting a finding that the defendant's obstructive behavior seriously threatens the core integrity of the trial. Unsubstantiated representations, even by the prosecutor, much less rumor, speculation, or innuendo, will not suffice. (Cf. *People v. Duran* (1976) 16 Cal.3d 282, 291 [127 Cal.Rptr. 618, 545 P.2d 1322]; *People v. Murphy* (2003) 107 Cal.App.4th 1150, 1158 [132 Cal.Rptr.2d 688].) To this end, the court may need to hold a hearing or may want to solicit the parties' respective arguments with written points and authorities and any evidentiary support on which they may seek to rely.[1] Because circumstances will vary with the facts of each case, we leave to the trial court's discretion the ultimate decision as to how best to proceed in making an appropriate record.

Such a record should answer several important questions. Most critically, a reviewing court will need to know the precise misconduct on which the trial court based the decision to terminate. (Cf. *Ferrel, supra,* 20 Cal.3d 888.) The court should also explain how the misconduct threatened to impair the core integrity of the trial. Did the court also rely on antecedent misconduct and, if so, what and why? Did any of the misconduct occur while the defendant was represented by counsel? If so, what is the relation to the

---

[1] ██ As with in-court misconduct, the proceeding to consider termination of the defendant's *Faretta* rights for out-of-court acts should not be the subject of a "motion" by the People, and we caution prosecutors not to overstep their proper role. (Cf. *People v. Dent* (2003) 30 Cal.4th 213, 222, fn. 2 [132 Cal.Rptr.2d 527, 65 P.3d 1286].) While the prosecutor can and should inform the court of any instances of misconduct along with relevant evidentiary substantiation, it is the court's responsibility to determine the appropriate sanction or other remedial action. In this regard, the prosecutor should serve as an adjunct of the court in discharging its duty to control the orderliness and integrity of the proceedings, not as an advocate for a particular result. As we observed in reversing the judgment in *Dent* for *Faretta* error: "The prosecution bears some of the responsibility for this reversal. Prosecutors should always be acutely aware that violation of the right of self-representation is reversible per se." (*Ibid.*)

defendant's self-representation?[2] Additionally, was the defendant warned such misconduct might forfeit his *Faretta* rights? Were other sanctions available? If so, why were they inadequate? In most cases, no one consideration will be dispositive; rather, the totality of the circumstances should inform the court's exercise of its discretion.

■ In reviewing the trial court's decision to terminate a defendant's right of self-representation for serious and obstructionist out-of-court misconduct, appellate courts should apply the same abuse of discretion standard applicable to terminations for in-court misconduct. (*People v. Clark, supra,* 3 Cal.4th at p. 115; see *McKaskle v. Wiggins, supra,* 465 U.S. at p. 178, fn. 8; *United States v. Brock, supra,* 159 F.3d at p. 1079.) While out-of-court acts will not necessarily require "a 'judgment call' under combat conditions" (*Clark,* at p. 116), we nevertheless accord due deference to the trial court's assessment of the defendant's motives and sincerity as well as the nature and context of his misconduct and its impact on the integrity of the trial in determining whether termination of *Faretta* rights is necessary to maintain the fairness of the proceedings.

## II.

■ Having concluded trial courts have discretion to terminate *Faretta* rights for out-of-court misconduct, we turn to the particulars of this case.

The trial court revoked defendant's in propria persona status following an incident in which defendant's newly appointed investigator, who was inexperienced working with self-represented defendants, mistakenly gave him an unredacted copy of the murder book.[3] The material included witness addresses and telephone numbers, as well as criminal history records, to which defendant was not entitled. (See Pen. Code, § 1054.2, subd. (b) [pro. per. defendant's access to address or telephone number of victim or witness is limited to contact through duly appointed investigator]; cf. *id.,* § 13302 [misdemeanor to furnish criminal history information to unauthorized person].) When the investigator met with the prosecutor the next day, the prosecutor realized defendant had improperly received this material and immediately notified the court. The court ordered the sheriff to remove all documents from defendant's jail cell, box and seal them, and deliver the boxes to the courtroom.

---

[2] Because the necessary facts are not before us, we express no opinion as to the propriety of a trial court's relying on misconduct committed while the defendant was represented by counsel to deny a *Faretta* motion in the first instance.

[3] A "murder book" is a notebook or file compiled by law enforcement and the prosecution that contains investigative reports, witness statements, photographs, audio and videotape recordings, and other material related to the case.

At a subsequent proceeding, the investigator and defendant described for the trial court what had transpired. The prosecutor argued that defendant's improper acquisition of discovery, when considered in light of antecedent attempts to suborn perjury, fabricate an alibi, and possibly intimidate a prosecution witness,[4] warranted termination of his *Faretta* rights. In his view, defendant clearly understood the discovery process and knew he was not entitled to review these documents but, nevertheless, had taken advantage of the fact a new investigator had been appointed. Defendant asserted that when the investigator gave him the murder book, he did not know what he was being handed.

The court indicated that defendant had "already done things that [he was] not supposed to do. That [he had] already received information that [he] knew [he was] not to receive. That [he] had that information in [his] possession for a period of time. This was information that was not to be in [his] possession. . . ." He was "a very, very manipulative person" and "no longer entitled to [his] pro. per. privileges." The court terminated defendant's right of self-representation and appointed standby counsel to represent him.

Understandably, since neither the court nor the parties had the benefit of our analysis, the record here answers few of the questions we have determined are relevant to a proper ruling on termination of *Faretta* rights. (See *ante*, at p. 11.) In light of this, it is difficult, if not impossible, to determine whether defendant's out-of-court misconduct seriously threatened the core integrity of the trial. Compounding this difficulty is the lack of information as to exactly what improper discovery defendant actually had access to. The trial court ordered all materials in his cell seized and taken to the court in sealed boxes, but did not examine these materials or make any attempt to segregate and remove those to which defendant was not entitled. Thus, it is impossible to determine if some sanction short of termination would have adequately addressed the problem. (Cf. *Illinois v. Allen, supra,* 397 U.S. at pp. 343–344.) In other words, the record lacks a specific assessment of both the nature and the impact of defendant's misconduct to calibrate an appropriate response. (See generally *Faretta, supra,* 422 U.S. at pp. 833–834.)

Under the circumstances, we consider it prudent to return the matter to the trial court for a full hearing as to the reasons for and necessity of terminating defendant's right of self-representation.

---

[4] This conduct had occurred while defendant was represented by counsel prior to being granted his right to self-representation.

## DISPOSITION

The judgment of the Court of Appeal reversing defendant's conviction is affirmed, and the Court of Appeal is directed to remand the case to the trial court for a hearing in accordance with our opinion. If, at the conclusion of the hearing, the trial court finds defendant's *Faretta* rights were properly terminated, the court should reinstate the judgment. If the trial court determines defendant's self-representation should not have been terminated, it should order a new trial, if the People so elect. If the judgment is reinstated, or a new trial ordered, appellate review will be available to the parties regarding the trial court's ruling.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.