Filed 2/5/14  P. v. Bailey CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>LARRY BAILEY,<br><br>        Defendant and Appellant. | B247277<br><br>(Los Angeles County<br>Super. Ct. No. BA395151) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Clifford L. Klein, Judge.  Affirmed.

Marcia C. Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne and Julie A. Harris, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Larry Bailey appeals from the judgment entered following his conviction by jury for failing to register as a sex offender (Pen. Code, § 290, subd. (b)) with an admission he suffered a prior felony conviction (Pen. Code, § 667, subd. (d)). The court sentenced appellant to prison for four years. We affirm the judgment.

## FACTUAL SUMMARY

On August 10, 2012, the court granted appellant's motion to represent himself.[1] The court told appellant he would have to file all motions on or before September 7, 2012, and appellant agreed to do so. The court indicated a problem with pro per defendants was they frequently filed motions at each court appearance. The court appointed Attorney Lawrence Sperber as appellant's stand-by counsel. The court continued the case with appellant's consent to September 7, 2012, as day 0 of 30.

On September 7, 2012, the court asked appellant if he would be ready for trial in 30 days. Appellant indicated he needed to make motions. The court reiterated its complaint about pro pers and seriatim motions, and said at some point the court would prohibit additional motions and try the case.

Appellant moved to exonerate his bond on his Riverside case.[2] Appellant also moved for his release on his own recognizance. The court denied that motion. Appellant indicated he would appeal the denial. Appellant moved to continue the case on the ground he had a "court case going to the Supreme Court." The court denied the motion. Appellant added he needed time to prepare in the law library. Appellant also indicated he had a discovery motion. The court told him to file it. At appellant's request, the court continued the case to October 4, 2012.

---

[1]     A detailed recitation of the facts of the present offense is not necessary in this appeal. Suffice it to say on or about December 16, 2011, appellant failed to register as a sex offender in Los Angeles after changing his residence.

[2]     The probation report reflects appellant last registered as a sex offender in Palm Springs in April 2010 and was arrested for violating Penal Code section 290. He was released from Riverside County jail in December 2011 and he relocated to Los Angeles.

On October 4, 2012, appellant gave to the court a document listing about 15 alleged constitutional rights and asked the court to sign it. The court declined to do so. The court denied appellant's motion to exonerate his bond in the Riverside case. Appellant submitted a motion to disqualify the district attorney. Appellant also submitted a motion to disqualify the judge on the ground appellant wanted to call him as a witness at a hearing on appellant's motion to disqualify the district attorney. Appellant also asked the court to recuse itself. At appellant's request, the court continued the case to October 12, 2012. Appellant said he would file a *Pitchess*[3] motion. The court told appellant, "You have to file that right away because that takes three weeks."

On October 12, 2012, the court called the case and stated appellant had just filed a motion to disqualify the court pursuant to Code of Civil Procedure section 170.6. The court denied appellant's motion to disqualify the district attorney, denied appellant's motion to disqualify the judge on the ground appellant would call him as a witness on the former motion, and refused to recuse itself.

Appellant objected to the denial of his motion to disqualify the district attorney, and objected to the court's denial of his Code of Civil Procedure section 170.6 motion. Appellant asked for a continuance to file his *Pitchess* motion and to research issues pertaining to the court's denial of his section 170.6 motion. Appellant denied the court "[told appellant] last time [that appellant] had to file [the *Pitchess* motion]." The court indicated appellant had until November 16, 2012, to file his *Pitchess* motion.

The court asked if appellant waived his right to trial to November 16, 2012, plus 15 days, and appellant objected. Appellant interrupted the court when it was discussing the waiver issue and the court told appellant to be quiet for a second. The court asked if appellant was waiving his right to trial as indicated above, and appellant replied the court was being recused for bias and prejudice. The court again asked and appellant waived time but reiterated the court was biased and prejudiced. The court continued the case.

---

[3]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

3

On November 16, 2012, appellant filed a motion to disqualify the judge pursuant to Code of Civil Procedure section 170.6, but essentially it was a motion to disqualify the judge for cause pursuant to Code of Civil Procedure section 170.1. The court denied the section 170.6 motion as untimely, noting appellant brought it for the second time. The court also indicated it would construe the motion as a section 170.1 motion. After the court told appellant he had to be prepared in order to represent himself in court, the court stated, "Don't glare at me. Just be prepared." Appellant objected to any further hearings before the court. The court overruled the objection.

The court indicated appellant was moving to disqualify the district attorney based on vindictive prosecution. The court denied the motion. Appellant continued arguing his motion to disqualify the district attorney and motion to disqualify the judge under Code of Civil Procedure section 170.6. The court began discussing appellant's Code of Civil Procedure section 170.1 motion, but appellant repeatedly interrupted. The court stated, "If you interrupt me, you're not going to be representing yourself anymore. I'm going to appoint counsel, all right? Let me finish. I gave you my ruling." Appellant asked for transcripts for an appeal. The court denied the request, indicating appellant could receive them if he was convicted.

Appellant asked for another investigator because he had a conflict of interest with his current investigator. The court denied appellant's request. Appellant argued about the denial and the court later told Sperber, "I already warned [appellant] if he interrupts, you're going to be on the case." Appellant apparently submitted his *Pitchess* motion to the court, but the court indicated it could not hear the motion because appellant had not served it on the police department.

On November 16, 2012, appellant filed a discovery motion asking for statements made to police officers and other individuals. The court indicated the motion was ridiculous except to the extent it requested statements to officers. The court, at appellant's request, continued the case to December 17, 2012, for *Pitchess* and discovery

4

proceedings. Appellant again argued his Code of Civil Procedure section 170.6 motion and the court again denied it.

On December 17, 2012, the court indicated the court's denial of appellant's Code of Civil Procedure section 170.1 motion had been mailed to him. The court asked if appellant wanted to be heard concerning his *Pitchess* motion, and appellant replied no. The court indicated much of appellant's *Pitchess* motion pertained only to his Riverside case, and to the extent the motion pertained to the present case, the motion was without merit. When appellant began to interrupt, the court told him, "Let me finish. If you interrupt me, you're not going to represent yourself anymore." The court noted it had given appellant an opportunity to be heard, and he had said nothing. The court denied the *Pitchess* motion. Appellant objected to the denial.

Appellant submitted on December 17, 2012, a motion to dismiss based on *Brady*,[4] a motion under the Federal Rules of Civil Procedure, a motion to dismiss the district attorney, and a petition for a writ of habeas corpus. Appellant also filed a motion to recuse the court. The court indicated it already had denied the motion and denied it again. Appellant continued to argue the issue. Appellant moved for the appointment of an expert, but the court denied the motion as without merit. Appellant argued the denial was biased and prejudiced. The court indicated it would rule on appellant's new motions on the next court date. The court noted appellant had filed 10 motions. Appellant objected to any further hearings before the court. The court continued the case to January 7, 2013, as day 20 of 30.

On January 7, 2013, the court granted appellant's request for an ex parte hearing and, during the hearing, appellant told the court his arrest, and various People's reports, were fabricated. The court told appellant the matter was inappropriate for an ex parte hearing. Appellant stated he understood. The court stated, "Let me tell you where we stand now so we can reopen the courtroom. If there is a DA assigned, we'll start this trial

---

**4**     Apparently this was a reference to *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215].

tomorrow." Appellant asked what had happened to his habeas petition. Appellant submitted additional motions to the court but the court indicated appellant already had filed several of them, the court had denied them, and appellant had presented nothing new. The court ordered the courtroom reopened.

The court later indicated it had denied in writing appellant's habeas petition. The court also stated, "We're going to find out if there is a DA ready to try this case tomorrow. If there is, we'll bring in the jury." The court and parties later discussed additional discovery delivered to appellant, and the prosecutor indicated he had provided to appellant's investigator all court-ordered discovery. The court commented, "We'll see you later, Mr. Bailey, when we find out if we can start tomorrow."

Appellant asked for additional pro per funds. The court stated, "We're going to find out whether we're going to trial tomorrow or not, all right? And if we're going to trial tomorrow, you're going to have to explain to me why you need pro per funds." The prosecutor later indicated he was not ready for trial but hoped to be ready on January 9, 2013. The court stated, "So Mr. Bailey, I guess we'll have to trail it until tomorrow to see where we stand, so we're going to trail it until tomorrow . . . . One of two wheelchair cases will start.[5] There is a slight chance we may transfer this case to . . . another wheelchair court that might be opened, but it's unlikely."

Appellant told the court he had not subpoenaed witnesses and the court replied it did not know why appellant had not done so. Appellant claimed he had not known trial had been scheduled for January 7, 2013. The court told appellant to call his investigator and have him serve subpoenas on appellant's witnesses. The prosecutor estimated trial would take two days, including jury selection. The court indicated witnesses could be brought in on January 14, 2013.

---

[5]     Appellant apparently used a wheelchair.

Later, the court asked, "Since I'm going to bring in a jury on Wednesday [January 9, 2013][6] and I'm going to start this case or another case, is there anything you're willing to plead to?" As the court discussed the issue, appellant interrupted. The court later stated, "I'll let you finish afterwards. . . . [A]nd then you can talk." The court also later said, "Mr. Bailey, if you're going to represent yourself, you have to learn to answer questions simply." Appellant continued interrupting and indicated the court had ignored all of appellant's written motions. The court then stated, "If you want to lose your pro per privileges, keep talking like that."

Appellant continued interrupting, the court finally secured an answer from appellant that he was making no plea offers, and the court gave appellant a further opportunity to speak. Appellant told the court, inter alia, the court was supposed to be a mediator, not a prosecutor, and the court had been a prosecutor during the entirety of the proceedings and was biased and prejudiced.

The court indicated appellant had filed new motions. One was a motion to strike his strike. The court indicated it would handle that later in the event appellant was convicted. Another was a petition seeking compensation, including punitive damages, for the alleged violation of appellant's constitutional rights. The court explained it lacked jurisdiction over the matter. Appellant indicated the petition pertained to his Riverside case. The court told him the petition did not pertain to the present case. Appellant interrupted and said it was all the same charge. The court explained that when the jury was present, appellant could not bring up every complaint he had about the criminal justice system, and "[w]e're not here to try your Riverside case." Appellant continued interrupting and again raised the issue of his Riverside case and his "constitutional statutory rights." The court replied, "Yeah, you keep bringing that up. I'm going to appoint standby as your lawyer. We have to focus on the case that's before the court."

---

**6**     We accept appellant's concession Wednesday was January 9, 2013.

The court indicated it would trail the case to January 8, 2013, and "we'll see whether were going to start it on Wednesday or not." Appellant asked the purpose of coming to court on January 8, 2013. The court replied, "To see if we're starting the case tomorrow – or starting it Wednesday – excuse me – starting it Wednesday." Appellant asked when was he supposed to contact his investigator if appellant would be in court. The court replied it would try to have appellant's investigator present in court on January 8, 2013. Appellant provided the name of his investigator.

On January 8, 2013, appellant failed to appear in court, Sperber was present, and the court indicated as follows. Appellant had refused to appear in court on January 8, 2013. The inmate refusal form said appellant was not feeling well, but the bailiff said a deputy who had tried to secure appellant's presence in court had said appellant had gone to the law library. Because appellant had been barely cooperative during court proceedings and had refused to appear in court on January 8, 2013, the court had no alternative but to revoke appellant's pro per status and appoint Sperber as appellant's counsel.

Sperber later indicated appellant had left phone messages for Sperber that gave him the impression appellant might have wanted to dispose of the case. The court noted the following. On January 7, 2013, the court asked appellant at least twice if he had any offers and he had refused to answer. Because appellant made no offers, the court, on January 7, 2013, indicated the case would be tried on January 8, 2013. Appellant clearly did not want to start his trial on the latter date.

The court trailed the case to January 9, 2013. On that date, the court commented appellant had refused to appear on January 8, 2013. Appellant replied, "I had a bloody nose and stuff." The court commented, inter alia, "I know. But I heard you went to the law library, and you've been on the edge anyway with your pro per status. And when I heard you refused to come and you still went to the law library, you can come with a bloody nose. We could have delayed start of the case, . . ." The court advised appellant he was not representing himself and Sperber would represent him. The court denied

8

appellant's *Brady* motion to dismiss, his motion under the Federal Rules of Civil Procedure, and his motion regarding an alleged failure to arraign him within 48 hours. On January 9, 2013, voir dire of the venire commenced.

## ISSUE

Appellant claims the trial court violated his constitutional rights to self-representation, due process, and a fair trial by revoking his right to self-representation.

## DISCUSSION

*The Trial Court Properly Revoked Appellant's Right of Self-Representation.*

Appellant claims as indicated above. We reject the claim. In *People v. Carson* (2005) 35 Cal.4th 1 (*Carson*), our Supreme Court held, consistent with *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562] (*Faretta*), a trial court may revoke a defendant's right of self-representation for misconduct that seriously threatens the core integrity of the trial, whether or not that misconduct occurs in the courtroom. (*Carson*, at p. 6.) The "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." (*Id*. at p. 8.) *Carson*, quoting *Faretta*, stated the right of self-representation is not a license to abuse the dignity of the courtroom, or a license not to comply with relevant rules of procedural and substantive law. (*Carson*, at p. 8.) *Carson* observed the relevant rules of procedural and substantive law are not limited to those relating solely to the trial itself. (*Id*. at p. 9.)

In *People v. Welch* (1999) 20 Cal.4th 701 (*Welch*), our Supreme Court noted a condition precedent to a defendant's exercise of the right of self-representation is whether the defendant is able and willing to abide by rules of procedure and courtroom protocol. (*Id.* at p. 734.) A self-representing defendant should not be allowed by disruptive conduct to "bring his trial to a standstill." (*Ibid*.) "Ultimately, the effect, not the location, of the [defendant's] misconduct and its impact on the core integrity of the trial will determine whether termination is warranted." (*Carson*, *supra*, 35 Cal.4th at p. 9.)[7]

---

[7] *Carson* observed, "When determining whether termination is necessary and appropriate, the trial court should consider several factors in addition to the nature of the

*Welch* stated, "[A] trial court must undertake the task of deciding whether a defendant is and will remain so disruptive, obstreperous, disobedient, disrespectful or obstructionist in his or her actions or words as to preclude the exercise of the right to self-representation. The trial court possesses much discretion when it comes to terminating a defendant's right to self-representation and the exercise of that discretion 'will not be disturbed in the absence of a strong showing of clear abuse.' [Citations.]" (*Welch*, *supra*, 20 Cal.4th at p. 735.)

In the present case, on January 8, 2013, the trial court stated, "[I]n view of the fact that Mr. Bailey has been barely cooperative during court proceedings *and* has refused to come to court, I don't see any alternative but to revoke his pro per status." Fairly read, the trial court's statement referred to the facts that during court proceedings prior to January 8, 2013, appellant had been barely cooperative and, on January 8, 2013, he had refused to come to court.

The record supports the trial court's statement appellant was barely cooperative. Indeed, as discussed below, the record demonstrates appellant was disruptive, obstreperous, disobedient, disrespectful, and obstructionist. Although appellant had agreed to file all motions by September 7, 2012, he appeared on that date and said he needed to file motions.

After September 7, 2012, appellant filed numerous, meritless, and frequently frivolous, motions, pleadings, and documents. Some pertained to his Riverside case, a matter over which the present trial court had no jurisdiction. Another sought the court's signature on a statement of appellant's alleged constitutional rights. The motions

misconduct and its impact on the trial proceedings." (*Carson*, *supra*, 35 Cal.4th at p. 10.) Those factors are (1) the availability and suitability of alternative sanctions, (2) whether the misconduct is more removed from the trial proceedings, more subject to rectification or correction, or otherwise less likely to affect the fairness of the trial, (3) whether the defendant had been warned that misconduct will result in the termination of the defendant's pro per status, and (4) whether appellant has intentionally sought to disrupt and delay his trial. (*Ibid*.) "Ultimately, the relevance inheres in the effect of the misconduct on the trial proceedings, not the defendant's purpose." (*Id.* at p. 11.)

10

included repeated motions to disqualify the district attorney, repeated untimely peremptory challenges to the court, a motion to disqualify the court for cause, a discovery request the court said was partially ridiculous, a motion under the Federal Rules of Civil Procedure, and a petition seeking punitive damages from the trial court for the alleged violation of his constitutional rights, in part based on his Riverside case. Significantly, appellant does not contend on appeal the trial court erred as to any of its rulings on any of appellant's motions, pleadings, and/or filings.

Appellant's *Pitchess* motion reflected his dilatory procedure. He failed to file it by September 7, 2012, despite his agreement to do so. On October 4, 2012, the court told appellant he had to file his *Pitchess* motion right away. Nonetheless, on October 12, 2012, appellant denied that on October 4, 2012, the court told him that he had to file the motion. On November 16, 2012, appellant apparently submitted a *Pitchess* motion to the court, but failed to properly serve it, resulting in further delay in the resolution of the motion. The court ultimately denied it as meritless.

Appellant risked further delay by his failure to subpoena witnesses. On December 17, 2012, the court continued the case to January 7, 2013, as day 20 of 30, but on January 7, 2013, appellant told the court he had failed to subpoena any witnesses, i.e., witnesses whom the court could have ordered to return if trial did not start on January 7, 2013.

Appellant repeatedly interrupted the court and appellant posed numerous, unnecessary, repeated objections and arguments, even after the court had ruled. At times, appellant refused to indicate whether he would waive time. The court repeatedly warned appellant that if he persisted in his misconduct, the court would revoke his right to represent himself.

Indeed, the record reflects an effort by appellant to manipulate proceedings to secure an unfair advantage over the prosecutor. After appellant, during the January 7, 2012 ex parte hearing, indicated he understood it was inappropriate for the court to conduct an ex parte hearing concerning the matter for which he ostensibly had sought the hearing, appellant nonetheless tried to press other issues to the court ex parte.

11

The record also supports the trial court's statement appellant refused to come to court on January 8, 2013. The trial court repeatedly commented trial would start on January 8, 2013. It is true that, after the prosecutor indicated he hoped to be ready for trial on January 9, 2013, the trial court indicated trial might start on that date. However, after appellant complained he would not be able to contact his investigator if appellant came to court on January 8, 2013, the court said it would try to have the investigator appear in court on that date. Appellant provided the investigator's name to facilitate the court's efforts.

In sum, whether or not trial was to start on January 8, 2013 (an issue on which appellant focuses), the record demonstrates appellant refused to appear in court on that date despite his knowledge the court indicated it would attempt to arrange a meeting between appellant and his investigator on that date to facilitate bringing the case to trial. The record does not reflect that on January 8, 2013, appellant made any effort to notify the court he would not appear in court.

On January 9, 2013, appellant did not deny the court's comments to the effect on January 8, 2013, he had refused to appear in court, he had gone to the law library, he could have come to court with his alleged ailment, and, if he had done so, the court, because of the alleged ailment, could have delayed starting the case. The trial court reasonably could have concluded appellant's excuse for failing to come to court was a sham. Moreover, in light of that fact, the trial court reasonably could have concluded appellant would fail to appear in court on one or more days in the future. We note the prosecutor indicated trial would take only two days; a failure to appear would significantly disrupt trial. On January 9, 2013, the trial court told appellant he was not representing himself and he would be represented by Sperber.

In light of our analysis of appellant's conduct prior to January 8, 2013, and his refusal to appear on that date, the record adequately demonstrates appellant was "deliberately engag[ing] in serious and obstructionist misconduct" (*Carson, supra,* 35 Cal.4th at p. 8) and would "remain so disruptive, obstreperous, disobedient,

12

disrespectful or obstructionist in his . . . actions or words as to preclude the exercise of the right to self-representation" (*Welch*, *supra*, 20 Cal.4th at p. 735).  The trial court did not abuse its discretion or violate appellant's rights to self-representation, due process, and/or a fair trial by revoking his right to self-representation.[8]

***DISPOSITION***

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

---

[8]     Appellant (who focuses on his failure to appear on January 8, 2013) suggests the trial court revoked appellant's pro per status on the ground he was barely cooperative because he failed to answer the court's question about a plea offer and instead explained why his case should be dismissed.  However, although the trial court on January 8, 2013, commented on that failure and explanation, the trial court did so, not in the context of explaining why appellant was barely cooperative, but in the independent context of rejecting a much later suggestion of appellant's trial counsel that appellant may have wanted to dispose of the case.  Appellant also asserts, "Additionally, although appellant had been warned that if he interrupted the court his pro per status could be terminated, the record reflects no other warnings that would warrant the sanction imposed here."  (See fn. 7, *ante*.)  However, the record belies that assertion.

13
