Filed 5/12/14  P. v. Ruiz CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ALAVRO RUIZ,<br><br>　　　Defendant and Appellant. | B247786<br><br>(Los Angeles County<br>Super. Ct. No. PA073086) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cynthia L. Ulfig, Judge.  Affirmed.

Sharon Fleming, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The trial court granted Alvaro Ruiz's request to represent himself prior to sentencing to permit him to move to withdraw his no contest plea to a charge of aggravated assault. Shortly thereafter the court revoked Ruiz's self-represented status when it learned he had possessed a dangerous weapon (a shank) in the courtroom. On appeal from the judgment Ruiz contends the court's decision constituted structural error. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Ruiz was convicted of robbery and possession of methamphetamine in February 2011. He was sentenced to an aggregate state prison term of 26 years eight months.

While incarcerated Ruiz and several other inmates attacked fellow inmate Jason Barrios. Ruiz was charged in a felony complaint with one count of assault by means of force likely to produce great bodily injury with a special allegation he had personally inflicted great bodily injury on Barrios. It was also specially alleged Ruiz had previously suffered one prior serious or violent felony conviction within the meaning of Penal Code, section 667, subdivision (a), and the three strikes law and had served two separate prison terms for felonies. Ruiz pleaded not guilty and denied the special allegations.

On September 13, 2012 Ruiz withdrew his not guilty plea, waived his right to a preliminary hearing, pleaded no contest to the aggravated assault charge and admitted one prior prison term allegation; the remaining special allegations were dismissed. Pursuant to the negotiated agreement, Ruiz was to be sentenced to a two-year state prison term to be served consecutively to the previously imposed sentence. Ruiz waived time for sentencing.

On December 17, 2012 Ruiz indicated he wanted to withdraw his plea. His counsel informed the court, because she believed there were no valid grounds for such a motion, Ruiz might assert his Sixth and Fourteenth Amendment rights to represent himself under *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] (*Faretta*).

Ruiz appeared for sentencing on February 8, 2013 and asked to represent himself. The trial court granted the motion. Later the same day a deputy sheriff reported finding a

2

shank in Ruiz's rectum during a routine search before Ruiz boarded the bus to return to jail from court. The trial court described the shank as "a metal piece of perhaps a blade or some other items [*sic*] that clearly could be used as a dangerous and deadly weapon." Ruiz's self-represented status was summarily revoked. After observing that Ruiz was a known gang member with a criminal record, which included recent and pending cases involving offenses committed while incarcerated,[1] the court concluded Ruiz had sought self-represented status and the accompanying in-custody privileges to facilitate future criminal activity. The court also found, because Ruiz had possessed the shank while he was in the courtroom earlier that day, he presented "a great harm to people within the court system."

On February 11, 2013 the trial court reappointed counsel to represent Ruiz, confirmed Ruiz still wanted to represent himself and conducted a hearing to determine whether his self-represented status should remain revoked. At the conclusion of the hearing, the court reiterated its earlier finding that permitting Ruiz to represent himself seriously threatened the safety and security of those in the courtroom and the jail. At the request of Ruiz's counsel, however, the court continued the hearing for further argument.

On February 22, 2013 Ruiz's counsel argued that Ruiz was entitled to represent himself to pursue a motion to withdraw his plea. Counsel also maintained, rather than terminate Ruiz's self-represented status, the court should consider imposing less severe sanctions to address its security concerns.

In ruling Ruiz's self-represented status should remain revoked, the trial court reiterated the factors in support of its decision: The nature of the shank itself, a piece of metal three to four inches in length with a sharpened tip, which, the court observed, Ruiz could only have possessed to cause death or serious bodily injury to others in the courtroom and jail; Ruiz's criminal record and gang membership; and his recent history of assaultive conduct and other offenses, committed with confederates against fellow

_____

[1] On May 3, 2012 Ruiz had been arrested while in custody and charged with conspiracy, extortion and attempted extortion of money from other inmates.

inmates. The court concluded Ruiz believed he had little to lose by committing additional crimes while incarcerated since he was already serving a lengthy state prison term and intended to use the privileges available to self-represented defendants, possibly with the assistance of others, to harm individuals in the courtroom and the jail.

Ruiz objected to the trial court's decision, stating he had always been respectful in the courtroom, and adding, "Nobody's life is in danger right now. What occurs outside the courtroom is a whole different story."

At the March 21, 2013 sentencing hearing Ruiz moved to replace his appointed counsel (*People v. Marsden* (1970) 2 Cal.3d 118). During the in camera hearing, Ruiz explained he made a *Marsden* motion because the trial court had repeatedly refused to restore his self-represented status. Defense counsel again told the court she had advised Ruiz there were no grounds for a motion to withdraw his plea. The court reviewed the transcript of the plea hearing with Ruiz and denied his *Marsden* motion. In accordance with the plea agreement, the court then sentenced Ruiz to a two-year state prison term for aggravated assault with a prior prison term enhancement, consecutive to the sentence he was already serving. Ruiz filed a timely notice of appeal and obtained a certificate of probable cause.

## DISCUSSION

### 1. *Standard of Review*

We review a trial court's decision to revoke a defendant's self-represented status for an abuse of discretion. (*People v. Williams* (2013) 58 Cal.4th 197, 252.) We "accord due deference to the trial court's assessment of the defendant's motives and sincerity as well as the nature and context of his misconduct and its impact on the integrity of the trial in determining whether termination of *Faretta* rights is necessary to maintain the fairness of the proceedings." (*People v. Carson* (2005) 35 Cal.4th 1, 12; accord, *Williams,* at p. 252.)

### 2. *Governing Legal Principles*

A criminal defendant has a right to represent himself or herself at trial under the Sixth Amendment to the United States Constitution. (*Faretta, supra,* 422 U.S. at

4

pp. 835-836; *People v. Williams, supra,* 58 Cal.4th at p. 252.) "'A trial court must grant a defendant's request for self-representation if the defendant knowingly and intelligently makes an unequivocal and timely request after having been apprised of its dangers.' [Citation.] Erroneous denial of a *Faretta* motion is reversible per se. [Citation.] [¶] However, the right of self-representation is not absolute. '[The] government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.' [Citation.] 'The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.'" (*Williams,* at pp. 252-253.)

A trial court may terminate a defendant's self-represented status for misconduct that seriously threatens the core integrity of the trial, whether or not that misconduct occurs in the courtroom. (*People v. Carson*, *supra*, 35 Cal.4th at p. 6.) "Ultimately, the effect, not the location, of the misconduct and its impact on the core integrity of the trial will determine whether termination is warranted." (*Id.* at p. 9.) In other words, "[w]hen a defendant exploits or manipulates his in propria persona status to engage in such [threatening or intimidating] acts, wherever they may occur, the trial court does not abuse its discretion in determining he has forfeited the right of continued self-representation." (*Ibid.*)

When determining whether termination of a defendant's self-represented status is appropriate, the trial court should consider the nature of the misconduct, its impact on the trial proceedings, the availability and suitability of other sanctions, whether the defendant was warned that particular misconduct would result in termination, and whether the defendant intentionally sought to disrupt and delay the trial. (*People v. Carson*, *supra*, 35 Cal.4th at p. 10.) The defendant's intent to disrupt is not a "necessary condition," but is relevant to the effect of the misconduct on the trial proceedings. (*Ibid.*) "Each case must be evaluated in its own context, on its own facts . . . ." (*Ibid.*; see, e.g., *People v. Williams, supra,* 58 Cal.4th at pp. 253-255 [defendant's self-represented status properly revoked for using dilatory tactics].)

5

3. *The Trial Court Did Not Abuse Its Discretion in Revoking Ruiz's Right to Self-representation*

In *People v. Butler* (2009) 47 Cal.4th 814, the trial court granted defendant's pretrial *Faretta* motion in a death penalty case but then revoked his self-represented status because of incidents of misconduct in jail that created security risks. (*Id.* at pp. 819-821.) On one occasion defendant had concealed a metal shank in his rectum prior to entering the courtroom. (*Id.* at p. 820.) The trial court subsequently granted defendant's renewed *Faretta* motion, but revoked his self-represented status a second time after learning that jailhouse restrictions on defendant's privileges had prevented him from being ready for trial. (*Id.* at pp. 822-823.) The second revocation was based on defendant's impaired ability to represent himself, not his prior misconduct. (*Ibid.*) To the contrary, the trial court stated defendant's instances of out-of-court misconduct were not a concern; the court could handle him in the courtroom. (*Id.* at p. 822.) In light of that statement, in finding the trial court had erred in terminating defendant's self-representation, the Supreme Court did not decide whether the out-of-court misconduct would have justified revocation of defendant's self-represented status. (*Id.* at p. 826.) In dicta the Court majority acknowledged the trial court "had ample reason to be reluctant about defendant's self-representation" because he was "an obvious security risk, and safety precautions were justified both in the jail and the courtroom." (*Ibid.*) The Court further observed, however, "there was no showing that his pro. per. status increased the risk in any way. Self-represented or not, defendant was going to be housed in the jail, transported to and from the court and in attendance for his trial." (*Ibid.*)[2]

Relying primarily on this language from *Butler*, Ruiz contends the trial court abused its discretion in terminating his self-represented status, which, in turn, is structural error requiring reversal of the judgment. The *Butler* dicta does not compel the conclusion the trial court here was required to permit Ruiz to continue to represent himself.

---

[2]     Two dissenting justices concluded defendant had forfeited his right to self-representation. (*People v. Butler, supra*, 47 Cal.4th at pp. 829-834 (dis. opn. of Chin, J.).)

6

It is true Ruiz, unlike the defendant in *Butler*, committed his acts of misconduct, including possession of a shank in the courtroom, while he was represented by counsel. We are also mindful Ruiz had not exhibited rude or disruptive behavior during court proceedings. Unlike the defendant in *Butler*, however, in addressing the trial court, Ruiz made an unmistakable threat to harm others. As discussed, Ruiz told the court, "Nobody's life is in danger right now. What occurs outside the courtroom is a whole different story." From that statement, Ruiz's possession of a deadly weapon within the courtroom itself and his continuing record of criminal violence, together with the lack of any colorable ground for withdrawing his no contest plea—the purported basis for Ruiz's desire to represent himself—the trial court reasonably determined Ruiz's request was pretextual, thinly masking an intent to commit further violence, thereby threatening the core integrity of the remaining trial proceedings. Although the trial court could have attempted to employ other security measures and less restrictive sanctions, the court did not abuse its discretion in concluding Ruiz had forfeited the right to continued self-representation.

## DISPOSITION

The judgment is affirmed.

PERLUSS, P. J.

We concur:

WOODS, J.                                   SEGAL, J. [*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7