Filed 12/17/25  P. v. Bosch CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B343252 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA107305) |
| v. | |
| EDWARD BOSCH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William L. Sadler, Judge.  Reversed.

Owen P. Martikan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Edward Bosch (defendant) appeals from his criminal conviction for first-degree burglary.  On appeal, he argues that the trial court erred in (1) terminating his right to represent himself, and (2) striking a juror for cause.  Because we conclude that the trial court erred in terminating his right to self-representation, we are obligated to reverse and have no occasion to reach the second issue.

### FACTUAL AND PROCEDURAL BACKGROUND

**I.     Facts**

In late November 2020, defendant and others broke into a home and stole high-end equipment from a music studio in the home.  Surveillance video inside the home showed defendant to be one of the burglars, and defendant left his fingerprints at the scene.

**II.     Procedural History**

**A.     *Charges***

The People charged defendant with first-degree burglary (Pen. Code, § 459).[1]

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

**B.** *Defendant's fluctuating status as a self-represented litigant*

1. *Initial order allowing self-representation*

Although initially appointed counsel, defendant in October 2023 asked to represent himself. The trial court thereafter advised defendant of the dangers and disadvantages of self-representation, and after defendant maintained his desire to represent himself, granted the request.

2. *Abandonment of self-representation*

In March 2024, defendant asked the trial court to appoint advisory counsel for him (that is, counsel to assist him in preparing for trial), explaining that his "pro per" privileges in custody had been revoked because he had been involved in "an incident" in the "pro per" unit of the jail. When the court explained that it would not appoint advisory counsel and that what defendant needed was a lawyer appointed to represent him, defendant said he wanted to "think about" whether to have counsel reappointed and, after a break, requested to "take back counsel." The court then reappointed the same attorney who had previously represented him.

3. *Second order allowing self-representation*

After defendant and his counsel appeared at an April 2024 hearing at which they disagreed over whether to seek a continuance of the trial and defendant left midway through the hearing, defendant at a May 2024 hearing asked for a *Marsden* hearing[2] to discuss his grievances with counsel. At that hearing, defendant indicated his desire to represent himself once again. The trial court determined that defendant still had pro per privileges in custody for a pending murder charge against him,

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

3

and granted his request for self-representation after advising him that representing himself in this case—while simultaneously representing himself in the pending murder case—was a "really bad decision." The court also advised defendant that it would "take away" his right to self-representation if defendant were to have any "disciplinary issues that . . . would curtail hi[s pro per privileges]" in custody. The court also advised defendant, who had refused to come to court on two prior occasions, that trial would proceed in his absence if he refused to be transported to court again in the future.

4.     *Revocation of self-representation*

On June 20, 2024, the trial court held a pre-trial hearing at which it advised the parties that the Los Angeles County Sheriff's Department had filed a formal notification that defendant's pro per privileges in custody had been terminated because defendant had assaulted another prisoner in the library used by pro per litigants, which evinced a "propensity for violence and jail rule violations." Defendant told the court that the assault had been a "one-on-one fight"; that the assault had been "nothing serious" because "nobody really got hurt"; and that defendant had been "defend[ing] [him]self." Defendant added that it would be "[un]fair" for him to "lose [his] pro per status" in court based on the altercation in the pro per library in jail because defendant had "never been disruptive in th[e] courtroom." The court "agree[d]" that defendant had "never been disruptive in the courtroom," but nevertheless indicated its "inclin[ation]" to revoke defendant's right to represent himself because defendant had violated the court's "order" not to get into any "altercation[s] . . . in the pro per module" and because, without "access to" the "pro per library," defendant would be unable to "conduct [his]

4

defense." Before the court could make a final ruling, defendant repeatedly said, "I got to go," refused to sit down, and was escorted out of the courtroom. The court then revoked defendant's self-representation status and reappointed his prior counsel to represent him.

### C. *Trial*

The case proceeded to trial, with defendant represented by counsel. A jury convicted defendant of first-degree burglary. The trial court sentenced him to state prison for the middle term of four years.

### D. *Appeal*

Defendant timely appealed.

### DISCUSSION

Defendant's chief argument on appeal is that the trial court erred in revoking his right to self-representation. We review a trial court's decision to revoke a defendant's self-represented status for an abuse of discretion. (*People v. Becerra* (2016) 63 Cal.4th 511, 518 (*Becerra*).)

Criminal defendants have a federal constitutional right to represent themselves at their criminal trial. (*Faretta v. California* (1975) 422 U.S. 806, 817-818 (*Faretta*).) Yet this right is "not absolute." (*People v. Butler* (2009) 47 Cal.4th 814, 825 (*Butler*).) A trial court may revoke a defendant's self-represented status if the defendant has "'deliberately engage[d] in serious and obstructionist misconduct.'" (*People v. Carson* (2005) 35 Cal.4th 1, 8 (*Carson*).) Revocation may be justified based on (1) a defendant's in-court misconduct or (2) a defendant's out-of-court misconduct, but only if that out-of-court misconduct "seriously threatens the core integrity of the trial." (*Id.* at pp. 8, 11; see also *id.* at p. 10 [out-of-court efforts to intimidate witnesses;

revocation appropriate]; cf. *People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1516 [throwing excrement at jail officials insufficient on its own].)

The trial court abused its discretion in revoking defendant's self-representation status in this case. The court's stated reason for doing so was defendant's loss of pro per privileges while in custody. This is an invalid reason as a matter of law, as the People properly conceded at oral argument. Our Supreme Court has noted that limitations or loss of pro per privileges while in custody are not a "justification for depriving inmates of the right to represent themselves." (*Butler, supra,* 47 Cal.4th at p. 827; *Ferrel v. Superior Court* (1978) 20 Cal.3d 888, 892, overruled in part on other grounds by *Butler*.) The trial court also alluded to the defendant's failure to adhere to the condition the trial court attached to reinstatement of his self-represented status—namely, that defendant not engage in any more misconduct in the pro per unit of the jail. This is also an invalid reason as a matter of law because courts may not attach conditions to a defendant's exercise of their constitutional right to self-representation (beyond the condition of not engaging in serious and obstructionist misconduct). (*Faretta, supra,* 422 U.S. at 834, fn. 46.) Because application of an incorrect legal standard constitutes an abuse of discretion (*People v. Knoller* (2007) 41 Cal.4th 139, 156), the trial court erroneously denied defendant his right to self-representation. This error is not subject to harmless error analysis, so we are compelled by precedent to vacate the conviction. (*Becerra, supra,* 63 Cal.4th at p. 520.)

The People resist this outcome, urging that we may affirm the revocation on any possible valid ground (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12) and that there is such a

6

valid ground here—namely, that defendant's refusal to come to court on two occasions and his insistence upon leaving the courtroom as the trial court was announcing its ruling revoking his self-representation status "serious[ly] threaten[ed] the core integrity of the trial."  The facts and law are to the contrary.  The trial court found, point blank, that defendant had "never been disruptive" in the courtroom.  Contrary to what the People asserted at oral argument, the court's finding regarding the effect of the defendant's behavior on its proceedings is not one we may casually brush aside; instead, it is owed deference.  (*Carson, supra*, 35 Cal.4th at p. 12 ["accord[ing] due deference to the trial court's assessment of . . . the nature and context of [a defendant's] misconduct and its impact on the integrity of the trial"]; *People v. Ng* (2022) 13 Cal.5th 448, 494-495 [entrusting to "trial courts" "considerable discretion in determining whether termination of *Faretta* rights is necessary to maintain the integrity and fairness of proceedings"].)  When we factor out that one of defendant's refusals to be transported to court occurred while he was represented by counsel and that his insistence upon leaving occurred as the trial court was issuing its ruling (see *Becerra, supra*, 63 Cal.4th at p. 520 ["subsequent misconduct, no matter how serious, cannot shore up an unsupported ruling that had already taken place"]), we are left with a single refusal to come to court.  This falls short of what is necessary to seriously threaten the core integrity of the trial in light of the trial court's express finding that this had *not* been disruptive.

7

## DISPOSITION

The judgment is reversed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.

HOFFSTADT


We concur:



_____, J.

MOOR



_____, J.

KIM (D.)

8