Filed 11/26/14  P. v. Renteria CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B253034 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA382978) |
| v. | |
| JOSE RENTERIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Jose Renteria of attempted premeditated murder, with findings that he used a deadly weapon and that he committed the offense for the benefit of a criminal street gang. The trial court sentenced Renteria to a term of life, with a minimum parole period of 15 years for the gang enhancement, plus one year for the deadly weapon enhancement. We affirm.

## FACTS

In September 2011, Renteria was in custody in the Los Angeles County Men's Central Jail.[1] On September 9, 2011, Renteria got out of his cell and ran into a nearby shower area where he used a "shank" made with a razor blade to slash another inmate repeatedly. At the time of the attack, the victim inmate was about to be escorted from the shower area back to his cell, and, in accord with normal jail procedures for moving prisoners, was handcuffed behind his back. The victim inmate was a "cooperator" in investigations into activities of the Surenos and Mexican Mafia gangs in the jail system. Renteria's appeal does not challenge that substantial evidence showed he was an active functionary of the Surenos gang, and that he committed the attack for the benefit of the gang.

In late 2011, the People obtained and filed an indictment charging Renteria with attempted murder (§§ 187, subd. (a); 664), with an allegation of premeditation, and with allegations that he personally used a deadly weapon (§ 12022, subd. (b)(1), and that he committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)). The case was tried to a jury in November 2013.

---

[1] The jury in Renteria's current case did not hear so, but the record on appeal shows that Renteria was in custody awaiting trial in another case No. BA350350. That case involved charges of special circumstance murder and attempted premeditated murder. In February 2013, about eight months before trial in Renteria's current case, the charges in case No. BA350350 was tried to a jury and Renteria was convicted as charged. Earlier this year, we affirmed the judgment in case No. BA350350. (See *People v. Renteria* (Aug. 20, 2014, B247272) [nonpub. opn.].)

The prosecution presented evidence establishing the facts summarized above. Renteria did not present any affirmative defense evidence; his trial counsel argued that the attack was not an attempted premeditated murder, but an "assault" by a "pawn" who had been directed and coerced by higher-ups in his gang to "punish" the victim. Defense counsel argued that the prosecution had alleged only "one charge," attempted murder, and then had failed to prove its case. The trial court instructed on attempted murder, and on the principles of premeditation.[2] On November 19, 2013, the jury returned a verdict finding Renteria guilty as charged. The trial court thereafter sentenced Renteria as noted at the outset of this opinion.

Renteria filed a timely notice of appeal.

## DISCUSSION

### I.      The Self-Representation Claim

Renteria contends his conviction must be reversed because the trial court erred in denying his *Faretta* motion.[3] We disagree.

In *Faretta*, the United States Supreme Court ruled that a criminal defendant's right to have the assistance of counsel for his defense guaranteed by the Sixth Amendment of the United States Constitution includes the right of self-representation. (*Faretta, supra*, 422 U.S. at p. 821.) However, the right of self-representation is not absolute. Among other limits, a defendant asserting his or her right of self-representation must be able and willing "'to abide by rules of procedure and courtroom protocol.'" (*People v. Watts* (2009) 173 Cal.App.4th 621, 629, quoting *McKaskle v. Wiggins* (1984) 465 U.S. 168, 173.) When a defendant's "serious and obstructionist out-of-court misconduct" shows there is a threat to the core concept of a trial and or to the trial court's ability to conduct a

---

[2]      The reporter's transcript shows that the trial court rejected suggestions offered by Renteria's trial counsel that instructions on attempted voluntary manslaughter, assault, and battery would be appropriate in light to the trial evidence.

[3]      *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

fair trial, "the defendant's *Faretta* rights are subject to forfeiture." (See *People v. Carson* (2005) 35 Cal.4th 1, 10 (*Carson*).)

On February 1, 2013, Renteria and his then-appointed counsel appeared for a pre-trial scheduling conference in his current case, as well as for motions in his other case. (See footnote 1, ante.) During the course of the February 1st proceedings, Renteria's counsel informed the trial court that Renteria wanted to proceed pro per in his current case. The court denied Renteria's request to represent himself, pointing to a sheriff's report that Renteria had one week earlier attacked the assigned prosecutor in the lockup area of the courtroom. As explained by the court, it had ordered Renteria to comply with an order to be photographed. However, once unshackled, Renteria beat on and injured the prosecutor. The prosecutor had provided photographs to the court showing injuries to his forehead, neck, and face, including a "swollen and cut and bleeding lip."[4]

On appeal, Renteria openly argues that "punching the prosecutor in the lockup does not affect the core integrity of the trial," and that this means the trial court erred in denying his *Faretta* motion. We see no trial court error. Renteria's violent attack while he was supposed to be complying with an order to be photographed demonstrated two truths: one, he was unable to comply with rules and protocols of the courtroom, and, two, the court's ability to conduct a fair and safe trial were threatened. In his reply brief, Renteria offers that the record shows he "had not misbehaved in the courtroom." We are satisfied that violence in the lockup area is close enough; the record supports the trial court's conclusion that Renteria was not willing to abide the rules and protocols of a courtroom.

We reject Renteria's argument that the trial court was "obligated" under *Carson, supra*, 35 Cal.4th 1 to conduct a hearing to determine "exactly what happened" in the lockup, and whether there was a nexus between what happened and Renteria's ability and willingness to represent himself appropriately. *Carson* requires a trial court

---

[4] The trial court also relied on the sheriff's report for an order pursuant to *People v. Duran* (1976) 16 Cal.3d 282, 286 that Renteria would be shackled during his other trial, which was then about to begin.

4

to "document its decision" denying a defendant's request for self-representation so that a reviewing court may know the "precise" basis for the trial court's decision. (*Id*. at p. 11.) In short, a trial court is "obligated," to use Renteria's word, to preserve a record so that meaningful review of the self-representation issue may be undertaken by a reviewing court. In fulfilling this obligation, *Carson* teaches that a trial court "*may* need to conduct a hearing." (*Ibid,* italics added.)

Here, the trial court preserved a record which allows us to know precisely why it denied Renteria's request for self-representation. To the extent that Renteria asserts that the sheriff's report of an attack was "unsubstantiated," he is merely arguing an absence of substantial evidence, and he is wrong. The sheriff's report of an attack was substantiated by photographs of the prosecutor's injuries. Further, we note that we see no denial in the record offered by Renteria. None of the authorities cited by Renteria in his opening brief on appeal support the proposition that a criminal defendant's physical assault on a person involved in a case, inside the court's facilities, is insufficient to disqualify the defendant from representing himself.

Finally, we reject Renteria's argument that because the trial court ruled that his attack on the prosecutor did not require the prosecutor's recusal, it did not justify denying Renteria's request for self-representation. The two issues are not related. When it comes to recusing a prosecutor, the issue is whether there is some reason the prosecutor would be unable to be fair, thereby threatening the defendant's right to a fair trial. (See, e.g., *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711; *Hollywood v. Superior Court* (2008) 43 Cal.4th 721, 727.) In other words, the focus is on the prosecutor's abilities to act properly. In the self-representation situation, as noted above, the focus is on the defendant's abilities to act properly. We have found the record to support the trial court's determination that Renteria could not act properly, and nothing in his recusal-based argument persuades to us to find differently.

## II.    The Instructional Error Claim

Renteria contends his conviction must be reversed because the trial court erred in denying his trial counsel's suggestion that instructions on the lesser offense of attempted voluntary manslaughter would be appropriate.  We disagree.

Voluntary manslaughter is a lesser included offense of murder, with the missing element being the mental state of malice.  "Only" a sudden quarrel or heat of passion, or an unreasonable but good faith belief in the necessity of self-defense, negate malice when a defendant intends to kill.  (*People v. Lee* (1999) 20 Cal.4th 47, 59.)  For murder to be reduced to voluntary manslaughter under a heat of passion theory, both provocation and heat of passion must be found.  (*Id*. at p. 60.)  The provocation which incites the killer to act must be caused by the decedent, or reasonably believed by the killer to have been by the decedent.  (*People v. Gutierrez* (2003) 112 Cal.App.4th 704, 708-709.)  Further, the provocation must be of such a level as to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection.  (*Id*. at p. 709.)

Here, Renteria never raised the specter of, nor argued, self-defense, unreasonable or otherwise.  There simply was no evidence of self-defense to support instructions on voluntary manslaughter.  His victim was handcuffed.

Similarly, there was no evidence demonstrating provocation or heat of passion, and no argument asserting such a scenario.  At best, Renteria's trial counsel argued that no one actually saw the initial first seconds of the encounter.  Renteria's defense was "no intent to kill, just to assault."  Because the evidence failed to demonstrate any indicia of provocation, instructions on voluntary manslaughter were not warranted.  (See *People v. Gutierrez, supra*, 112 Cal.App.4th at p. 709.)

We disagree with Renteria that instructions on "the lesser offense" were required because "the prosecution [did] not put on any evidence of the victim's injuries and no witness saw what happened inside the shower."  The extent of a victim's injuries, if any, is not an element of the crime of attempted murder or attempted voluntary manslaughter.  The victim's injuries are not relevant in any discussion of what instructions were required in Renteria's current case.  We agree that a defendant may reasonably argue (as Renteria

6

did in his case) that the absence of injury to a victim could support a jury's finding that the defendant did not intend to kill, but rather, only to hurt or "punish." However, this is a matter of the sufficiency of the prosecution's proof of intent to kill for a charge of attempted murder, not a matter of instructions on the lesser offense of attempted voluntary manslaughter. As we discussed above, the only recognized circumstances which negate malice when there is an intent to kill, so as to reduce a charge of murder (or attempted murder) to voluntary manslaughter (or attempted voluntary manslaughter), are imperfect self-defense or heat of passion; the absence of injury to the victim is not a circumstance which negates malice.

## DISPOSITION

The judgment is affirmed.


                                          BIGELOW, P.J.

We concur:



            RUBIN, J.



            FLIER, J.

7