Filed 9/29/15  P. v. Corona CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JESUS CORONA,<br><br>        Defendant and Appellant. | E061580<br><br>(Super.Ct.No. FWV1200093)<br><br>O P I N I O N |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald L. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Peter Quon, Jr. and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.  INTRODUCTION

Defendant and appellant, Jesus Corona, appeals from his conviction of three counts of robbery (Pen. Code, § 211)[1] and three counts of assault with a semiautomatic firearm (§ 245, subd. (b)), along with true findings on the allegation as to the robbery counts that a principal personally used a firearm (§ 12022.53, subd. (b)), on the allegation as to the assault counts that defendant personally used a firearm (§ 12022.5, subd. (a)), and on the prior conviction allegation (§§ 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a)-(d)).

Defendant contends the trial court erred in revoking his right to represent himself and in failing to properly evaluate his repeated requests for replacement of his appointed counsel.[2]

We find no error, and we affirm the judgment.

## II.  FACTS AND PROCEDURAL BACKGROUND

On appeal, defendant challenges only the denial of his right to represent himself and his requests to replace appointed counsel.  We therefore set forth the facts of the underlying crimes summarily.

On January 8, 2012, defendant entered an Auto Zone store in Rancho Cucamonga near closing time.  After the last customer left, defendant approached the register, pulled

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  Defendant initially contended, and the People conceded, that he was entitled to an additional five days of custody credit.  The trial court has since corrected the error and issued an amended abstract of judgment.

out a semiautomatic gun, and demanded money from three store employees. When defendant was arrested shortly after he left the store, deputies found an Auto Zone plastic bag containing approximately $1,300 in cash nearby, and defendant was carrying a loaded semiautomatic handgun.

The jury found defendant guilty of three counts of robbery (§ 211) and three counts of assault with a semiautomatic firearm (§ 245, subd. (b)), and found true the allegations as to the robbery counts that a principal personally used a firearm (§ 12022.53, subd. (b)), and as to the assault counts that defendant personally used a firearm (§ 12022.5, subd. (a)). The trial court found true a prior conviction allegation. (§§ 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a)-(d).) The trial court sentenced defendant to a total term of 51 years in prison.

Additional facts are set forth in the discussion of the issues to which they pertain.

A. *Self-representation*

Defendant contends the trial court erred in revoking his right to represent himself.

1. Additional Background

In September 2012, defendant had two cases pending: FWV1200093 (the current case), which was designated the lead case, and FWV1200156, which was designated the trailing case. Before the preliminary hearing, defendant requested propria persona status in both cases. The trial court stated that defendant had filled out the appropriate paperwork and advised defendant of the consequences of acting as his own attorney. Defendant informed the court that he had dropped out of school in the 10th grade, and he

3

acknowledged that he understood the consequences of representing himself. The trial court granted the request.

At the next reported appearance on November 15, 2012, M.J. De la Pena appeared for defendant and informed the court that defendant had retained her to represent him in both cases, but that he wished to remain as cocounsel so he could retain law library privileges. The trial court stated that defendant would either act in propria persona or not. Defendant informed the court that he had hired the De la Pena firm, and they could speak for him. The trial court revoked defendant's propria persona status, and the De la Pena firm became counsel of record.

On April 22, 2013, Ms. De la Pena informed the court that defendant again wanted to go in propria persona in both cases. The trial court stated that it was "seeing a disturbing pattern," and that it could deny propria persona status if it appeared defendant had delayed the process. The court stated that it would not entertain the *Faretta*[3] motion that day, but that defendant could bring the motion in superior court. The court confirmed the preliminary hearing for the following Wednesday on the lead case and repeated its concern that defendant's *Faretta* motion was a delay tactic.

Defendant acted as his own attorney at the preliminary hearing on the lead case; however, no discussion regarding the trial court's grant of propria persona status appears in the record. The De la Pena firm continued to represent defendant in the trailing case.

---

[3] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

4

At a hearing on May 31, 2013, the court stated it had received a petition from defendant for discovery in the lead case. The court found that the document did not comply with the requirements for bringing a discovery motion, and the court denied the petition without prejudice. The court explained that defendant had to follow specific rules to bring a motion for discovery, and the court would not consider a motion that did not comply with those rules.

At a hearing on July 26, 2013, for pretrial and motions, the deputy district attorney stated he had received a document labeled as an informal discovery request. The deputy district attorney represented that all discovery obligations had been complied with. The court stated it had read defendant's document and did not know what defendant was asking for. When the court asked defendant to explain his request, defendant repeatedly demanded that the trial court state its full name and failed to respond to the court's questions about his request. The trial court stated it would deny defendant's motion because it made no sense. Defendant continued to insist that the trial court state its full name for the record.

At a pretrial hearing on December 20, 2013, defendant was still acting in propria persona. He filed a document titled "letter Rogatory . . . opportunity to exhaust administrative remedy statement of interest of admiralty . . . ." The trial court stated it had attempted to read the document but was unsure what defendant was asking for, and asked defendant to explain. Defendant asked: "What's the claim filed against the legal entity?" The following colloquy ensued:

5

"[Defendant]: What's the claim filed against the legal entity? Was the claimed [*sic*] filed against a legal entity?

"THE COURT: Whether or not the Information was lawfully filed? Is that what you're asking?

"[Defendant]: Yes. The legal entity.

"THE COURT: It is lawfully filed at this point. It's within the procedures of the criminal law to file anything you want to. In terms of those procedures to change the legality of the file—

"[Defendant]: That still doesn't answer my question.

"THE COURT: This document to exhaust administrative remedies, we're not in administrative court, so this document is really nonsense.

"[Defendant]: What jurisdiction are we under?

"THE COURT: I'm sorry?

"[Defendant]: What jurisdiction are we under?

"THE COURT: I have jurisdiction as a judge of Superior Court. We've gone through this before. I'm not going to argue it with you. You know, we need to move forward on this matter. I'm beginning to wonder, sir, whether or not you do really understand what's going on.

"[Defendant]: I just asked you a question. You didn't answer. What—what jurisdiction are we under?

6

"THE COURT: Under the jurisdiction of the state of California and I've told you that before.

"[Defendant]: You're not answering my question.

"THE COURT: I'm not he[re] to answer your questions. You're here to tell me if you're ready for trial.

"[Defendant]: Are you dishonoring my statement of interest?

"THE COURT: I'm telling you I'm here today to find out if this matter is ready for trial.

"[Defendant]: I just asked you a question.

"THE COURT: You have—you haven't answered my question. I told you I'm not going to answer your questions unless they have some legal relevancy to this case. You tell me, are you ready for trial in this matter?

"[Defendant]: Are you referring to a defendant?

"THE COURT: I'm referring to you, sir.

"[Defendant]: I'm asking are you referring to a defendant?

"THE COURT: I'm referring to—

"[Defendant]: Do you have the birth certificate of the defendant?

"THE COURT: I'm referring to—

"[Defendant]: I'm not a defendant, ma'am.

"THE COURT: All right. I am prepared to find in this matter, [defendant], you do not have the ability to represent yourself based on your refusal to talk about this case

7

in a manner that makes sense and I will appoint counsel in this matter to represent you. . . ."

2. Standard of Review

A ruling revoking a defendant's propria persona status is reviewed for an abuse of discretion and "'will not be disturbed in the absence of a strong showing of clear abuse.'" (*People v. Welch* (1999) 20 Cal.4th 701, 735.)

3. Analysis

A defendant who represents himself must be willing and able "to abide by rules of procedure and courtroom protocol." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 173.) The trial court may properly revoke a defendant's propria persona status if the defendant "'deliberately engages in serious and obstructionist misconduct'" (*Faretta*, *supra*, 422 U.S. at p. 834) "that seriously threatens the core integrity of the trial" (*People v. Carson* (2005) 35 Cal.4th 1, 6).

The trial court stated that defendant "d[id] not have the ability to represent [him]self based on [his] refusal to talk about the case in a manner that ma[d]e sense . . . ." Defendant contends the trial court found either that he lacked the ability to act as his own counsel or that he was deliberately refusing to make sense.

Defendant argues that if the court found he lacked the ability, the ruling was in error because there was no showing he was mentally incompetent. In *People v. Johnson* (2012) 53 Cal.4th 519, the court stated that the standard for denying the right to self-representation is "whether the defendant suffers from a severe mental illness to the point

8

where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." (*Id.* at p. 530.) Although the trial court stated that defendant "d[id] not have the ability" to represent himself, the trial court further explained that such inability was based on defendant's *refusal* to talk sensibly about his case. Thus, we interpret the trial court's statement to mean that the defendant was deliberately engaging in obstructionist conduct. (See *People v. Butler*, *supra*, 47 Cal.4th at p. 825.)

Defendant argues that if it found defendant was engaging in obstructionist conduct, the trial court should have considered alternative sanctions before revoking his right to self-representation. In *People v. Carson* (2005) 35 Cal.4th 1, the defendant's out-of-court conduct led the trial court to revoke his right to self-representation. Our Supreme Court held that the trial court should have considered "the availability and suitability of alternative sanctions." (*Id.* at p. 10.) In our view, *Carson* is distinguishable—in that case, the trial court revoked *Faretta* rights as a sanction for the defendant's out-of-court conduct. Here, in contrast, the trial court revoked self-representation on the basis that defendant was, in effect, deliberately engaging in obstructionist conduct.

Defendant suggests that the trial court here could have offered the alternative sanction of appointing advisory counsel to present motions while allowing him to act as his own attorney during the evidentiary portion of the trial. However, the trial court had previously denied defendant's request for advisory or joint counsel. To offer that alternative after finding defendant had deliberately engaged in obstructionist conduct

9

would be to reward defendant for his own bad behavior. We find no abuse of discretion in the trial court's order revoking defendant's self-representation.

B. *Request to Replace Appointed Counsel*

Defendant contends the trial court erred in failing to properly evaluate his repeated requests for replacement of his appointed counsel because the trial court did not assess whether an irreconcilable conflict with counsel existed.

### 1. Additional Background

At the *Marsden*[4] hearing, the trial court asked defendant to state his reasons for requesting a change of counsel. Defendant stated: "We have a conflict of interest. I gave her a piece of paper to accept charges for value. She said you're not paying your way out of this. You're going to prison. Then she tells me I'm incompetent. Also, I tell her what to do, she don't want to do it." The court stated it needed more information, and defendant responded: "The issue is she—I asked her to do things, she won't do it. She said I was incompetent. She is representing me telling me I'm incompetent. So then we have a report saying I was competent. She goes no she won't do it."

Defendant's counsel told the court she had more than 32 years of criminal defense experience. She denied telling defendant he was going to prison. He had given her a document to file, but she did not know what it meant. She had shown the document to the court and the prosecutor, and they also did not know what it meant. She stated defendant was not talking to her and was reporting her to the State Bar. The trial court

---

[4] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

10

asked if a report to the State Bar would affect her ability to represent him, and she responded she was not concerned about it. She had asked to have his competency evaluated because she had observed his prior conduct in court, and she was "fine with" the report indicating he was competent. She believed his failure to communicate was willful.

The trial court found that defendant's noncooperation was willful and denied the *Marsden* motion. Defendant repeated to the court that he and his attorney had a conflict of interest. "She's not doing what I ask. I told her to accept the charge for value in consideration. You say you understand what a UCC-1 is?" The trial court stated it would not engage in a conversation with defendant and told defendant to talk to his counsel.

2. Analysis

Under *Marsden*, a defendant must show that appointed counsel is not providing competent representation or that there is an irreconcilable conflict such that ineffective representation is likely to result. (*People v. Dickey* (2005) 35 Cal.4th 884, 917.) The trial court must permit the defendant to explain his request for replacement of counsel and to relate specific instances or purported inadequate performance. (*Marsden*, *supra*, 2 Cal.3d at p. 124.)

"Once a defendant is afforded an opportunity to state his or her reasons for seeking to discharge an appointed attorney, the decision whether or not to grant a motion for substitution of counsel lies within the discretion of the trial judge. The court does not

11

abuse its discretion in denying a *Marsden* motion "'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.'" [Citations.] Substantial impairment of the right to counsel can occur when the appointed counsel is providing inadequate representation or when 'the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation].' [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 912.) However, "[a] defendant 'cannot simply refuse to cooperate with his appointed attorney and thereby compel the court to remove that attorney.' [Citations.]" (*Id.* at p. 918.) A defendant does not have a "constitutional right to an attorney who would conduct the defense of the case in accord with [his] whims . . . . Nor does a disagreement between defendant and appointed counsel concerning trial tactics necessarily compel the appointment of another attorney." (*People v. Lucky* (1988) 45 Cal.3d 259, 281-282.) A conflict between a defendant and counsel will not be considered irreconcilable "'if the defendant has not made a sustained good faith effort to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness.'" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1086.)[5]

Here, the trial court asked defendant to explain his request. Defendant indicated he wanted his counsel to file motions that counsel considered to be meritless. Defendant argues that he wanted his counsel to arrange a monetary settlement of the case, and the

---

[5] We note that the trial court had relieved defendant's previous counsel based on that counsel's representation that the attorney-client relationship was irretrievably broken and that defendant did not want counsel's advice.

breakdown in communication resulted from her failure to communicate his offer to the prosecutor. However, counsel told the court defendant had given her a document to file, but she did not know what it meant. She had shown the document to the court and the prosecutor, and they also did not know what it meant.

"A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense. [Citation.] Tactical disagreements between the defendant and his attorney do not by themselves constitute an 'irreconcilable conflict.' 'When a defendant chooses to be represented by professional counsel, that counsel is "captain of the ship" and can make all but a few fundamental decisions for the defendant.'" (*People v. Welch* (1999) 20 Cal.4th 701, 728-729.)

The trial court specifically found that any failure of communication between defendant and his attorney was due to defendant's willful noncooperation. The trial court did not abuse its discretion in denying the *Marsden* request.

### III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
J.

We concur:

McKINSTER _____
Acting P. J.

MILLER _____
J.

13