Filed 2/10/16  P. v. Sheppard CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B257759 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA060603) |
| v. | |
| LONNIE SHEPPARD, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

IT IS ORDERED that the opinion filed herein on January 29, 2016 be modified in the following particulars:

On page 1, in the first line under the case title, add the name "Daviann L. Mitchell" as judge.  The first and second lines under the case title now read:  APPEAL from a judgment of the Superior Court of Los Angeles County.  Daviann L. Mitchell and Hayden Zacky, Judges.  Reversed.

On page 3, in the fourth sentence of the first paragraph, after the words "the trial court," add "(Judge Daviann L. Mitchell)," so the sentence now reads:  Sheppard informed the trial court (Judge Daviann L. Mitchell) he did not want to waive time.

On page 4, in the first full sentence on the page, after the words "The court," add "(Judge Daviann L. Mitchell)," so the sentence now reads:  The court (Judge Daviann L. Mitchell) inquired if Sheppard had had an opportunity to speak with his attorney.

On page 6, at the beginning of the first paragraph, add the following sentence: The matter was tried before Judge Hayden Zacky.

This modification does not result in a change in the judgment.

NOT TO BE PUBLISHED.

_____

CHANEY, Acting P. J.        JOHNSON, J.                        LUI, J.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LONNIE SHEPPARD,<br><br>    Defendant and Appellant. | B257759<br><br>(Los Angeles County<br>Super. Ct. No. MA060603) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden Zacky, Judge.  Reversed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Lonnie Sheppard appeals from a judgment entered after a jury found him guilty of misdemeanor battery against the mother of his child (Pen. Code, § 243, subd. (e)(1)),[1] evading a peace officer by driving against traffic (Veh. Code, § 2800.4), assault with a deadly weapon (a car) against another motorist while driving against traffic (§ 245, subd. (a)(1)), resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1)), dissuading a witness from testifying (§ 136.1, subd. (a)(2)), and violating a domestic relations court order (§ 273.6, subd. (a)). After finding prior conviction allegations to be true, the trial court sentenced Sheppard to 60 years to life in prison.

Sheppard contends the trial court erred (1) in denying his request to represent himself at trial (*Faretta*[2] motion), (2) in ordering him to wear a stealth belt, which hooked to the chair under his clothing, during trial,[3] and (3) in declining to dismiss three of his prior strike convictions (*Romero*[4] motion). Sheppard also contends there is insufficient evidence supporting his conviction for assault with a deadly weapon, and insufficient evidence demonstrating his prior convictions arose from separate acts and therefore qualified as four separate strikes under the "Three Strikes" law.

For the reasons set forth below, we conclude the trial court erred in denying Sheppard's request for self-representation, an error which is reversible per se. Accordingly, we reverse the judgment and need not address all of the other contentions Sheppard raises on appeal.

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

[2] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

[3] The trial court's stated reasons for ordering the use of a stealth belt were: (1) on four occasions Sheppard refused to go to court as ordered, (2) Sheppard made requests for transfers from different jail facilities based on his claim his safety was at risk and the court believed Sheppard was "manipulating his custodial situation," and (3) Sheppard's phone privileges were revoked because he was contacting the victim in violation of a domestic relations court order.

[4] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

## BACKGROUND

The possibility of Sheppard representing himself first came up at a hearing on January 7, 2014, about 17 days before trial was set to commence.[5] On that date, the Alternate Public Defender accepted the appointment to represent Sheppard after his former counsel declared a conflict of interest. The Alternate Public Defender requested additional time to respond to the prosecution's motion to consolidate separate cases filed against Sheppard. Sheppard informed the trial court he did not want to waive time. The court explained to Sheppard that it could find good cause to grant his new defense counsel additional time over Sheppard's objection. The court also explained that Sheppard could represent himself, but the court admonished, "I strongly, strongly would advise you against doing [that]. So I don't think that would be in your best interest at all." Sheppard responded, "I guess I don't want to waive time so if I have to represent myself I will. I don't want to waive time." After further discussion with the court, Sheppard stated he did not want the Alternate Public Defender to represent him, he did not want to represent himself, and he did not want to waive time.

Near the conclusion of the hearing, the trial court stated: "Well, if you don't want to represent yourself, I'm not going to grant you pro per status. If you do want counsel to represent you, he can, or you can bring in private counsel. You want to think about it, come back tomorrow? You want to come back tomorrow? You can think about it, that way he [attorney from the Alternate Public Defender's office] can assign it to an attorney. That attorney can speak to you, explain to you what the situation is." During a discussion about scheduling the next hearing, Sheppard interrupted and stated, "Your Honor, I'll go pro per." The court agreed to give Sheppard the paperwork to request pro. per. status, and continued the matter to the following day.

The next day, January 8, 2014, the jail advised the trial court Sheppard refused to go to court. Later the same day, the jail advised the court Sheppard was ill. On January

---

[5] Trial did not actually commence until March 27, 2014, more than two months later.

3

9, 2014, Sheppard appeared in court with an attorney from the Alternate Public Defender's office representing him.[6] The court inquired if Sheppard had had an opportunity to speak with his attorney. Sheppard responded, "No, I'd like to go pro per, Your Honor." Defense counsel interjected to correct the record by stating that he and Sheppard did "speak in lockup," and to reiterate that Sheppard wanted pro. per. status. The court stated it had received Sheppard's *Faretta* waiver form, but the form was not filled out completely. The court noted it appeared that Sheppard originally had initialed the boxes and then had erased his initials. Sheppard indicated he did not fill out the form correctly because he was sick with the stomach flu the day before. The court paused the proceedings so Sheppard could finish filling out the form. Sheppard complied. The court asked Sheppard if he had read and understood the form. Sheppard responded affirmatively.

The trial court stated it had "a couple concerns" with Sheppard's request for pro. per. status, relating to the new charges filed against him in the case that was the subject of the motion to consolidate. The new charges were: dissuading the victim in the cases before the court (the mother of Sheppard's children) from testifying and violating a domestic relations court order protecting the victim. The court noted, "Beginning on August 25, 2013, and continuing throughout October 7, 2013, deputy sheriffs utilized the inmate telephone monitoring system and reviewed numerous calls" Sheppard made to the victim in violation of the domestic relations court order. As described by the court, during these calls, Sheppard "pleaded with the victim not to have any type of police contact, otherwise he will do serious time behind the domestic violence incident that occurred on August 22, 2013," and "also instructed the victim not to go to court so that the case would be dropped." The court asked the prosecutor if he wanted to add further information about the calls.

The prosecutor explained he had received information on 145 calls Sheppard made to the victim in violation of the domestic relations court order. The prosecutor had

[6] This same attorney represented Sheppard through sentencing.

4

listened to recordings of more than 40 of those calls. During the calls, Sheppard told the victim how to avoid being served so she would not have to come to court and testify against him. Sheppard acknowledged during the calls that he was violating the domestic relations court order by contacting the victim. Sheppard also told the victim, if the prosecution found her, she would be arrested and held until she testified. The court noted one of the cases before it already had been "dismissed and refiled once due to the victim's absence."

The trial court stated: "I will share with you, Mr. Sheppard, that the defendant does not have the right to disrupt the trial proceedings or interfere in such a way. Furthermore, you don't have the right to completely [*sic*], as its alleged in the preliminary hearing transcripts and counsel's representations, and the new charges and the probation report, that you have made in excess or approximately 145 calls in violation of the court order, a protective order, which has resulted in the initial dismiss and refile in the -603 matter. [¶] You are interrupting the court proceedings, and things moving on in an orderly fashion. You have violated the court order as it's alleged in no less than 145 occasions, and based on the allegations and the charges and the seriousness of the charges, the court is going to deny your pro per status. [¶] You don't follow the court orders. You do not have the right to disrupt the proceedings. And you have not complied based on the representations that have been made. So I will respectfully deny the request for pro per status . . . ."

Later in the January 9, 2014 hearing, Sheppard asked, "Your Honor, there's no type of way I can go pro per ever?" The trial court responded: "No, sir, not in these cases. In another case, you could if it didn't involve the same victim and the same circumstances. You have to evaluate that. That court would have to evaluate it at that time. But with respect to these matters, you're not permitted to go pro per based on your violations and what's alleged to have been at a minimum 145 violations of the court order."

5

A recitation of the evidence presented at trial supporting the charges is not necessary for our review of the trial court's denial of Sheppard's request for self-representation.

## DISCUSSION

### Self-Representation

Sheppard contends the trial court erred in denying his request to represent himself at trial.

A criminal defendant generally "has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so." (*Faretta*, *supra*, 422 U.S. at p. 807.) "A trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial." (*People v. Welch* (1999) 20 Cal.4th 701, 729.) As a matter of federal constitutional law, "when a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be." (*People v. Windham* (1977) 19 Cal.3d 121, 128 (*Windham*).) "Erroneous denial of a *Faretta* motion is reversible per se." (*People v. Butler* (2009) 47 Cal.4th 814, 824.)

Although the trial court did not find Sheppard failed to meet any of the conditions for self-representation set forth above, the court denied Sheppard's request for pro. per. status. Based on our review of the record, there is no indication Sheppard failed to meet any of the requisite conditions (a timely, knowing, intelligent, unequivocal request for self-representation), and the Attorney General does not argue otherwise.

A court may deny an equivocal request for self-representation that is "intended to delay or disrupt the proceedings." (*People v. Butler*, *supra*, 47 Cal.4th at p. 825.) There is no support in the record for an argument that Sheppard requested pro. per. status *in order to* delay or disrupt the proceedings. In fact, the record indicates Sheppard initially

6

requested pro. per. status because he believed he could take his cases to trial sooner than his newly appointed attorney from the Alternate Public Defender's office. On the date Sheppard submitted the *Faretta* waiver form, Sheppard made an unequivocal request for self-representation, and his newly appointed attorney reiterated Sheppard's desire for pro. per. status.

The trial court denied Sheppard's request for pro. per. status based on prior violations of the domestic relations court order, which the trial court characterized as disruption and interference with court proceedings. While disruption and interference with court proceedings might have been reasons to *revoke* Sheppard's pro. per. status if disruptive behavior continued after pro. per. status was granted, Sheppard's past violations of the domestic relations court order were not valid grounds for denying his request for self-representation. The Attorney General does not cite any cases indicating otherwise.[7]

The trial court should have granted Sheppard's request for self-representation (after advising him of the dangers of such representation), confirming that Sheppard met the three requisite conditions for self-representation discussed above. The court could have warned Sheppard that any disruptive behavior or interference with court proceedings might result in revocation of his pro. per. status. (See *People v. Carson*, *supra*, 35 Cal.4th at p. 10 [in deciding whether to revoke a defendant's pro. per. status due to the defendant's misconduct, the "court should also consider whether the defendant has been warned that particular misconduct will result in termination of in propria

___

[7] Neither Sheppard nor the Attorney General cites a case like this one where the trial court denied the defendant's request for self-representation based on past misconduct, with no prior warning that the misconduct could lead to the forfeiture of the constitutional right of self-representation—and we are aware of no such case. Sheppard and the Attorney General both cite cases in which trial courts *revoked* defendants' previously granted pro. per. status due to misconduct. (See, e.g., *People v. Butler*, *supra*, 47 Cal.4th 814; *People v. Carson* (2005) 35 Cal.4th 1.) We also cite these cases because they highlight the importance of exploring other alternatives or restrictions before revoking a defendant's pro. per. status due to misconduct.

persona status"].)  Sheppard's past misconduct, and the court's speculation that such misconduct would continue in the future, were not valid grounds for denying Sheppard's request for self-representation.

When a defendant engages in disruption and interference with court proceedings while representing himself, a court should consider "the availability and suitability of alternative sanctions" short of a "complete withdrawal of the defendant's right of self-representation."  (*People v. Carson*, *supra*, 35 Cal.4th at p. 10.)  On January 16, 2014, one week after denying Sheppard's request for self-representation, the trial court ordered Sheppard's phone privileges revoked on the prosecution's motion, based on the "history of this case and the allegations" (not based on new calls to the victim).  Instead of denying Sheppard's request for self-representation on January 9, 2014, the court could have ordered Sheppard's phone privileges revoked at that time and preserved Sheppard's constitutional right to represent himself while protecting the victim from Sheppard's influence.  (See *People v. Butler*, *supra*, 47 Cal.4th at p. 827 ["Restrictions on pro. per. privileges in custody are not unusual.  [Citations.]  They have never been deemed a justification for depriving inmates of the right to represent themselves"].)

We appreciate the seriousness of Sheppard's misconduct in violating the domestic relations court order and attempting to dissuade the victim from testifying in this case.  His past misconduct, however, should not have resulted in the loss of his constitutional right to represent himself.  As discussed above, the trial court could have made efforts to avoid disruption and interference with court proceedings (a warning, revocation of phone privileges) without denying Sheppard's request for self-representation in the first instance.  The error is reversible per se.

**Sufficiency of Evidence on Count 6 for Assault with a Deadly Weapon**

Given our reversal of the judgment based on the trial court's improper denial of Sheppard's request for self-representation, we need not address the other contentions Sheppard raises on appeal with the exception of his challenge to the sufficiency of the evidence supporting the conviction on count 6 for assault with a deadly weapon upon

8

John Doe.  To the extent the evidence is insufficient to support this conviction, Sheppard may not be retried on this count without offending the Double Jeopardy Clause.

In reviewing a challenge to the sufficiency of the evidence, "the reviewing court's task is to determine whether, in light of the whole record viewed in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt."  (*People v. Felix* (2009) 172 Cal.App.4th 1618, 1624.)  We "'"must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."'"  (*People v. Smith* (2005) 37 Cal.4th 733, 739.)  "The credibility of witnesses and the weight accorded the evidence are matters within the province of the trier of fact."  (*People v. Ramos* (2004) 121 Cal.App.4th 1194, 1207.)  "'An appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise.'"  (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419.)  "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'"  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

As the trial court instructed the jury, to prove assault with a deadly weapon under section 245, subdivision (a)(1), the prosecution must establish:

"1.  The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person;

"2.  The defendant did that act willfully;

"3.  When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in application of force to someone;

"AND

"4.  When the defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person."  (CALCRIM No. 875.)

Sheppard does not dispute a car may be used as a deadly weapon.  He contends the evidence presented at trial is insufficient to show he committed an act with a car "that by

9

its nature would directly and probably result in the application of force to a person." (CALCRIM No. 875.) We disagree with Sheppard's contention.

Substantial evidence presented at trial demonstrates, after Sheppard committed the battery upon the victim, he led police on a high-speed car chase as officers attempted to get him to pull over. He drove the wrong way down the shoulder of a highway, made unsafe lane changes, and reached speeds in excess of 100 miles per hour. After he was apprehended, Sheppard told a nurse he intentionally swerved at oncoming vehicles during the police pursuit in an effort to kill himself. Ronald Ciotta, one of the motorists who encountered Sheppard on the highway, testified at trial. Ciotta was driving east in his Ford 150 pickup truck, pulling a tractor-trailer. Ciotta observed Sheppard's car traveling west on the shoulder of the eastbound lanes, at a high rate of speed. As the two cars were approaching each other, Sheppard pulled his car into the lane where Ciotta was driving and drove "directly at" Ciotta. Ciotta took his foot off the gas pedal. "At the last moment," Sheppard pulled his car into the middle lane of the highway, passing within 50 to 100 feet of Ciotta's vehicle.

Sufficient evidence supports Sheppard's conviction for assault with a deadly weapon. (See *People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1183 ["a driver who deliberately races through a red light at a busy intersection and collides with another vehicle, causing injury to another, can be convicted of assault with a deadly weapon"].) Sheppard drove his vehicle directly at oncoming traffic as he traveled at a high rate of speed. The probable result of the manner in which Sheppard drove was a crash. The fact Sheppard did not collide with Ciotta or another motorist does not mean the evidence is insufficient to sustain the conviction.

The prosecution may retry Sheppard on this count (as well as the other counts on which Sheppard was convicted, but does not challenge the sufficiency of the evidence).

10

**DISPOSITION**

The judgment is reversed.

NOT TO BE PUBLISHED.

                                        CHANEY, Acting P. J.


We concur:


        JOHNSON, J.


        LUI, J.


11