Filed 10/13/23  P. v. Hunter CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRANDON EUGENE HUNTER,<br><br>    Defendant and Appellant. | B317559<br>(Los Angeles County<br> Super. Ct. No. BA491968) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deborah S. Brazil, Judge.  Affirmed.

Andrea Keith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Kathy S. Pomerantz, Deputy Attorney General, for Plaintiff and Respondent.

Appellant and defendant Brandon Eugene Hunter (Hunter) contends that the trial court abused its discretion by revoking his right to represent himself without a hearing and without consideration of the factors outlined in *People v. Carson* (2005) 35 Cal.4th 1 (*Carson*). Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Underlying Charges

Hunter was charged by amended information with fleeing a pursuing peace officer's motor vehicle while driving recklessly (count one) and misdemeanor hit and run driving resulting in property damage (count two). It was further alleged Hunter suffered one prior conviction in March 2011 pursuant to Penal Code sections 667, subdivision (b), and 1170.12, subdivision (b).

### B. Hunter's Self-Representation

At the preliminary hearing, the trial court granted Hunter's request to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). Hunter completed and signed a *Faretta* waiver, acknowledging that he could not "speak over the court or opposing counsel," and was required to "treat the court and opposing counsel with professionalism, respect and dignity." He further acknowledged he understood the court could "consider events that occurred both inside and outside of the courtroom when considering whether or not to revoke [his] pro per status, and that the right of self-representation is not a license to abuse the dignity of the courtroom." Hunter represented himself at subsequent court hearings.

On April 13, 2021, Judge Renee Korn filed a notice to revoke Hunter's pro per status after a hearing on multiple

motions he had filed.  The trial court noted that since his arraignment, Hunter's behavior had become "increasing[ly] disruptive and obstructive" and he "repeatedly interrupt[ed] during the court proceedings."  In particular, the court found that during a hearing on April 9, 2021, Hunter's "behavior worsened from his prior court appearances and he became unmanageable and defiant."  "Hunter became increasingly out of control.  [He] refused to accept th[e] court's rulings and repeatedly challenged the court. . . .  Ultimately, the last [10] minutes of the court session resulted in [Hunter] yelling and threatening both the court and the prosecution with lawsuits."  The court found Hunter had abused his pro per status and his in-court behavior constituted "serious and obstructionist misconduct that seriously threaten[ed] the core integrity of th[e] court and further trial procedures."

The trial court allowed Hunter to address why his pro per status should not be revoked on April 16, 2021.  At the hearing, Hunter repeatedly interrupted and disrespected the court.  When Judge Korn was explaining why Hunter's conduct was inappropriate, he interjected, "You're still talking ma'am, like, you're going on and on.  You're just being repetitive here."  After the court gave Hunter several warnings his pro per status could be revoked, it allowed Hunter to remain in pro per as he appeared to indicate he understood his behavior was improper.

On June 10, 2021, Hunter's case was assigned to Judge Mildred Escobedo for trial.  At the beginning of the proceedings, the trial court went over the rules for defendants representing themselves and instructed, "Never, ever interrupt me nor any other party speaking.  I will give you a chance to speak when your time comes.  Do not interrupt."  When the court asked for

3

information regarding the witnesses he planned to call, Hunter insisted he was expecting to speak to his investigator before the proceedings. The court observed that Hunter did not seem to be prepared for trial and was not answering its questions. However, once the investigator arrived, the court took a recess to allow Hunter to speak with him.

During the recess, the following exchange occurred:

"The court: The record should reflect that Mr. Hunter is interrupting [and] is speaking to the court disrespectfully, has made reference to having talked to Judge Korn about something. Now he is interrupting me, speaking over me and obstructing. Another disruption, Mr. Hunter --

[Hunter]: This is a recess.

The court: I will revoke your privilege for pro per status if you continue in this fashion. Let me make clear.

[Hunter]: I'm going to get you on judicial misconduct, so don't worry about it.

The court: The court is going to revoke his status. Counsel, you're in. Ten minutes."

When the proceedings resumed, the trial court reinstated Hunter's pro per status, but it again warned Hunter it could revoke his status if he continued not following the rules,

obstructing, interrupting, and acting unprofessionally.  Hunter responded, "If the court follow [*sic*] their rules and you maintain that non-judicial bias -- that non-bias judicial referee that you're supposed to . . . [¶] then we have no issue."  Hunter went on to accuse Judge Escobedo of being "in cahoots" with Judge Korn, adding that Judge Escobedo was "acting worse than [Judge] Korn."  He further remarked, "I'm trying to figure out what's going on with these women judges."  The court found Hunter's statements "completely and entirely disrespectful and uncalled for."

The trial court proceeded to rule on and grant one of the People's motions in limine to admit limited evidence regarding an outstanding warrant for foundational purposes, to which Hunter objected on hearsay grounds.  Hunter refused to accept the ruling and complained to a third person off the record, and the court repeated its warning that it would revoke his pro per status.  Despite the court's many admonishments, Hunter continuously interrupted the proceedings, threatened to file a lawsuit against Judge Escobedo, and exclaimed he was not going to let the trial move forward.  In between Hunter's interruptions, the court explained, "Hunter does not . . . let the court continue in the proceedings.  He continues to override . . . [¶] His outburst in court, his interruptions of court proceedings . . . [¶] the court is going to revoke pro per status."

The trial court then attempted to speak with Hunter's stand-by counsel, but Hunter continued to disrupt the proceedings and asserted that he refused the appointment of counsel.  The court informed Hunter that if he continued to interrupt, he would be removed from the courtroom.  A recess was then taken to have him removed.  The court later had

Hunter returned to the courtroom, but Hunter was again removed and placed in the detention lockup because he did not change his behavior.

The hearing resumed, and the trial court expressed a concern as to whether Hunter was competent to stand trial. The court noted that although Hunter had been given the chance to remain in pro per, he "would not respond as appropriate, wouldn't follow the instructions of the court, the formality of the court." The court added, "I was hesitant to revoke [his status], but his conduct just didn't permit me to conduct a trial." Shortly thereafter the court noted, "Hunter just caused a complete and utter melee in the lockup with deputies. He is -- he is out of control." After a pause in the proceedings, the court stated "[Hunter was] using force on [the] deputies as best as he can," and the court declared a doubt as to Hunter's competency under Penal Code section 1368 and suspended proceedings.

Proceedings were reinstated five months later with Hunter represented by counsel. Hunter pled no contest to counts one and two pursuant to *People v. West* (1970) 3 Cal.3d 595. The trial court struck Hunter's prior strike conviction and sentenced him to 16 months in state prison on count one and 180 days in county jail with credit for time served on count two. Hunter timely appealed.

## DISCUSSION
## A.    Governing Law and Standard of Review

Criminal defendants have the constitutional right to represent themselves at trial. (*Faretta*, *supra*, 422 U.S. at p. 819.) "That right is not without limits, however. [Citation] "'[The] government's interest in ensuring the integrity and

6

efficiency of the trial at times outweighs the defendant's interest in acting as his [or her] own lawyer.'" [Citations.]" (*People v. Becerra* (2016) 63 Cal.4th 511, 518.) A trial court may terminate a defendant's pro per status if he or she "engages in '"deliberate dilatory or obstructive behavior"' that 'threatens to subvert "the core concept of a trial" [citation] or to compromise the court's ability to conduct a fair trial.'" (*Ibid.*, quoting *Carson*, *supra*, 35 Cal.4th at p. 10.)

"'When determining whether termination is necessary and appropriate, the trial court should consider several factors in addition to the nature of the misconduct and its impact on the trial proceedings,' including: (1) 'the availability and suitability of alternative sanctions,' (2) 'whether the defendant has been warned that particular misconduct will result in termination of in propria persona status,' and (3) 'whether the defendant has "intentionally sought to disrupt and delay his trial."'" [Citation.] The intention to disrupt and delay trial is, in many instances, sufficient to order termination." (*People v. Ng* (2022) 13 Cal.5th 448, 494–495 (*Ng*); see *Carson*, *supra*, 35 Cal.4th at p. 10.) No one consideration is dispositive; rather, the totality of circumstances should inform the court's exercise of its discretion. (*Carson*, at p. 11.)

We review a ruling revoking a defendant's in propria persona status for abuse of discretion (*Carson*, *supra*, 35 Cal.4th at p. 12), and "[a] court's decision will not be disturbed absent a strong showing of clear abuse." (*Ng*, *supra*, 13 Cal.5th at p. 495.) We "accord due deference to the trial court's assessment of the defendant's motives and sincerity as well as the nature and context of his [or her] misconduct and its impact on the integrity of the trial in determining whether termination of *Faretta* rights

7

is necessary to maintain the fairness of the proceedings." (*Carson*, *supra*, 35 Cal.4th at p. 12.) In conducting our deferential review, we recognize that "the extent of a defendant's disruptive behavior may not be fully evident from the cold record," and that the trial court "is in the best position to judge [a] defendant's demeanor." (*People* v. *Welch* (1999) 20 Cal.4th 701, 735 (*Welch*).)

## B. The Trial Court Did Not Abuse its Discretion in Revoking Hunter's Pro Per Status

Hunter contends the trial court erred by revoking his pro per status without a hearing and without considering the factors outlined in *Carson*. We disagree.

The June 10, 2021, hearing began with Hunter continuously interrupting and making disrespectful comments, such as when he accused Judge Escobedo of being "in cahoots" with Judge Korn, and remarked he was "trying to figure out what's going on with these women judges." After the trial court granted the People's motion in limine, Hunter refused to accept the ruling and engaged in disruptive behavior that continued throughout the proceeding. Further, contrary to Hunter's claims, the court did not revoke his status "as soon as he disagreed with the court's ruling." The court constantly warned Hunter it would revoke his pro per status if his inappropriate behavior continued, and even gave him a second chance to proceed in pro per after initially revoking his status. The warnings had no effect on his conduct. (*Carson*, *supra*, 35 Cal.4th at p. 10.) He continued to demonstrate his unwillingness to follow rules of procedure or courtroom protocol, and he abused the dignity of the courtroom, jeopardizing the integrity of the trial. (*Faretta*, *supra*, 422 U.S.

8

at p. 834, fn. 46.)  In addition, given Hunter's multiple outbursts, during which he stated he would not allow the trial to go forward after the court's ruling on the motion, the court could reasonably find that Hunter "intentionally sought to disrupt and delay his trial." (*Carson*, *supra*, 35 Cal.4th at p. 10.)

Hunter's argument that the trial court did not explain on the record why it was revoking his pro per status is unpersuasive. "In a case of in-court misconduct, the record documenting the basis for terminating a defendant's *Faretta* rights is generally complete and explicit, without the need for further explanatory proceedings, because there is a contemporaneous memorialization either by the court reporter's recording events as they transpire in the courtroom or by the trial court's describing them for the record." (*Carson*, *supra*, 35 Cal.4th at p. 11.)  Not only does the record reflect Hunter engaged in disruptive and dilatory conduct, but the court also explained before revoking his pro per status that Hunter's outbursts were not allowing the proceedings to continue.  The court clarified, "Hunter would not respond as appropriate, wouldn't follow the instructions of the court, the formality of the court," and while the court was hesitant to revoke his pro per status, "his conduct . . . didn't permit [the court] to conduct a trial."

Furthermore, as to Hunter's contention that the trial court did not discuss alternative sanctions, Hunter does not suggest what alternatives were available.  Nor did Hunter file a reply brief responding to the People's argument that there were no feasible alternatives to revoking his status, given his in-court behavior.  Alternative sanctions are more suitable where misbehavior is removed from the courtroom setting and less likely to affect the fairness of trial.  (*Carson*, *supra*, 35 Cal.4th at

9

p. 10.)  Hunter's misconduct took place in the courtroom and after the court warned him multiple times that his failure to abide by its instructions would result in the loss of his pro per status. Moreover, as to Hunter's assertion that the court revoked his status without first conducting a hearing, Hunter fails to cite any authority holding a hearing is required prior to terminating a defendant's pro per status.

Additionally, although Hunter tries to characterize his conduct as "merely disagreeing" with the court , the trial court is in the best position to determine whether a defendant should be allowed to continue acting in pro per status, and we recognize that "the extent of a defendant's disruptive behavior may not be fully evident from the cold record." (*Welch*, *supra*, 20 Cal.4th at p. 735.)  Here, the court had ample opportunity to observe Hunter's misbehavior and found it precluded the court from holding a trial.  We will not disturb that exercise of discretion absent a clear showing of abuse.

Lastly, Hunter seemingly contends revocation was not warranted based on his conduct at the June 10, 2021, hearing because he had previously made 11 court appearances without incident.  However, the record does not support Hunter's characterizations of his past conduct.  On April 13, 2021, Judge Korn filed a notice to revoke Hunter's pro per status, which stated that since his arraignment, Hunter had become increasingly disruptive and obstructive, and she described him as "unmanageable and defiant."  At the April 16, 2021, hearing, Hunter continuously interrupted, spoke over, and disrespected Judge Korn, and although Hunter had been previously warned at that hearing that his status could be revoked, his obstreperous

10

behavior continued at the June 10, 2021, hearing in front of Judge Escobedo.

Hunter's conduct gave the trial court a reasonable basis for believing his self-representation would pose an unreasonable risk of future disruption. The court did not abuse its discretion in terminating his right to represent himself.

## DISPOSITION

The judgment is affirmed.


MORI, J.

We concur:


CURREY, P. J.


COLLINS, J.

11