Filed 3/9/26  P. v. Cooper CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B343191 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA085495) |
| v. | |
| DAMAJAI COOPER, | |
| Defendant and Appellant. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Lisa Strassner and Robert Chu, Judges. Affirmed.

Sunnie L. Daniels, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

―――――――――――――

A jury convicted defendant and appellant Damajai Cooper of second degree murder. (Pen. Code, § 187, subd. (a).)[1] Cooper's sole contention on appeal is that the trial court erred in revoking his in propria persona (pro. per.) status after he refused to appear for a pretrial hearing. When granting his motion for self-representation, the trial court warned Cooper that his refusal to appear in court would result in the termination of his pro. per. status. We find no abuse of discretion and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Factual Background*

Because the facts underlying Cooper's conviction are not relevant to the resolution of this appeal, we summarize them only briefly. Cooper dated Albert Madden's granddaughter and occasionally lived with Madden before the couple broke up.

In July 2023, Madden was found dead in the hallway of his home with a gunshot wound to his head. Expert testimony established that bullets and cartridges found at Madden's home and a bullet recovered from Madden's body matched test bullets and cartridges fired from a gun found in Cooper's bedroom. Bloodstains in a bedroom of Madden's home matched Cooper's DNA. Surveillance videos and cellular telephone records indicated that Cooper walked from his house to Madden's house in the early morning of the day Madden's body was found.

―――――――――――――

[1]     Undesignated statutory references are to the Penal Code.

2

*Procedural Background*

The People charged Cooper by information with murder committed with malice aforethought (§ 187, subd. (a)) and alleged that Cooper personally used a firearm in the commission of the murder (§ 12022.5, subd. (a)).

In January and March 2024, Cooper made *Marsden* motions after his attorney requested trial continuances to review prosecution evidence and obtain expert opinions.[2] At each hearing, Cooper expressed frustration about his attorney's requests for continuances and the lack of progress in his case. The trial court denied his motions.

On April 23, 2024, at a trial setting hearing, Cooper invoked his right to represent himself. Cooper agreed that he was familiar with a form titled "Advisement and Waiver of Right to Counsel"; had placed his initials next to each paragraph, indicating that he understood the warnings; and had signed at the bottom. One of the advisements on the form stated: "I understand that the Judge may terminate my right to act as my own attorney in the event that I engage in serious misconduct or obstruct the conduct and progress of the trial."

The trial court confirmed that Cooper understood the risks of self-representation. Among other things, the court asked: "Do you understand that if you misbehave while in court or on the way to court or refuse to come to court or in any way disrupt the integrity of the courtroom proceedings, your pro[.] per[.] privileges will be terminated?" Cooper asked the court to repeat the question. The court again asked: "If you misbehave while in court, on the way to court, or refuse to come to court, or in any way disrupt the integrity of the courtroom proceedings, your

---

[2]     *People v. Marsden* (1970) 2 Cal.3d 118.

3

pro[.] per[.] privileges will be terminated.  [¶] Do you understand that?"  Cooper stated that he understood.

The trial court found that Cooper voluntarily, knowingly, and intelligently waived his right to be represented by an attorney and granted him pro. per. status.

The court subsequently advised Cooper of his "AB700 rights."[3]  In pertinent part, the court stated: "You have the right and obligation to be personally present in court.  The trial or other proceedings will proceed without you if you refuse to be personally present. . . .  Your absence from the trial or other proceeding will constitute a voluntary waiver of any constitutional or statutory right to confront any witnesses against you or to testify on your own behalf."  Cooper confirmed that he understood.

Cooper indicated that he wished to proceed to trial as soon as possible.  The trial court asked the prosecutor to provide Cooper with written discovery by the end of the week and set a discovery compliance hearing for May 3, 2024.  The prosecutor agreed to have the discovery redacted and ready to turn over to

---

[3]     Assembly Bill No. 700 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 196) (Assembly Bill No. 700), amended section 1043 to provide that a felony trial may continue in a defendant's absence if the court makes specific findings by clear and convincing evidence, including that "[t]he defendant is in custody and is refusing, without good cause, to appear in court on that day for that trial"; "[t]he defendant has been informed of their right and obligation to be personally present in court"; and "[t]he defendant has been informed that the trial will proceed without the defendant being present."  (§ 1043, subd. (f)(1)(A)–(C); Stats. 2021, ch. 196, § 2.)

4

Cooper on that date.  The trial court explained that if Cooper did not waive time, the case would be sent out for trial on May 20.[4]

On May 3, 2024, the trial court stated that Cooper was not present in the courtroom.  The Sheriff's Department had provided the court with paperwork indicating that Cooper had refused to leave his cell to attend court that morning.  The court explained on the record that, when granting Cooper pro. per. status, it had made "it very clear, quote, if you . . . refuse to come to court, or in any other way disrupt the integrity of the courtroom proceedings, your pro[.] per[.] privileges will be terminated.  [¶] He has refused today in direct violation of what I just indicated were things he needed to follow, in terms of his pro[.] per[.] status."  The court terminated Cooper's pro. per. status and reappointed his public defender.

A jury found Cooper guilty of second degree murder and found true firearm enhancements under sections 12022.5, subdivision (a), and 12022.53, subdivisions (b) through (d).

The trial court sentenced Cooper to a total of 40 years to life, consisting of 15 years to life for the murder conviction and 25

---

[4]     The court urged Cooper to consider whether he would have enough time to prepare for trial, asking: "Do you really think that's enough time to look at all your discovery?  If you're getting some of it, only some of it on May 3rd, your investigator will have none of it, and you're really talking about going to trial two weeks later, on a murder, looking at 35-to-life, with no experts."  Cooper responded: "Respectfully, yes."

years to life for the section 12022.53, subdivision (d) firearm enhancement.[5]

Cooper timely appealed.

## DISCUSSION

**The Trial Court Did Not Abuse Its Discretion When It Terminated Cooper's Self-Representation**

Cooper argues that the trial court abused its discretion when it revoked his pro. per. status based on a single refusal to come to court.  We disagree and affirm.

### A.    Applicable legal principles

The Sixth Amendment to the federal Constitution gives a defendant the right of self-representation.  (*Faretta v. California* (1975) 422 U.S. 806, 807, 819.)  "That right is not without limits, however.  [Citation.]  ' "[The] government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." '  [Citation.]" (*People v. Becerra* (2016) 63 Cal.4th 511, 518.)  "Whenever 'deliberate dilatory or obstructive behavior' threatens to subvert 'the core concept of a trial' [citation] or to compromise the court's ability to conduct a fair trial [citation], the defendant's *Faretta* rights are subject to forfeiture."  (*People v. Carson* (2005) 35 Cal.4th 1, 10 (*Carson*).)

The California Supreme Court has identified "several factors in addition to the nature of the misconduct and its impact on the trial proceedings" that a trial court should consider when

---

[5]     The trial court also imposed, but stayed, sentences of 20 years to life for the section 12022.53, subdivision (c) enhancement; 10 years for the section 12022.53, subdivision (b) enhancement; and the mid-term of four years for the section 12022.5, subdivision (a) enhancement.

6

deciding whether to terminate a defendant's self-representation. (*Carson*, *supra*, 35 Cal.4th at p. 10.) "One consideration is the availability and suitability of alternative sanctions. [Citation.] Misconduct that is more removed from the trial proceedings, more subject to rectification or correction, or otherwise less likely to affect the fairness of the trial may not justify complete withdrawal of the defendant's right of self-representation. [Citations.] The court should also consider whether the defendant has been warned that particular misconduct will result in termination of in propria persona status. [Citation.]" (*Ibid*.) Finally, the court should "assess whether the defendant has 'intentionally sought to disrupt and delay his trial.' " (*Ibid*.) A dilatory purpose is sufficient to support termination, but intent is not a necessary condition. (*Ibid*.)

"The trial court has considerable discretion in determining whether termination of *Faretta* rights is necessary to maintain the integrity and fairness of proceedings. [Citation.] A court's decision will not be disturbed absent a strong showing of clear abuse." (*People v. Ng* (2022) 13 Cal.5th 448, 495 (*Ng*).)

### B.     Analysis

We evaluate whether the trial court abused its discretion in revoking Cooper's pro. per. status based on the *Carson* factors. Thus, we consider "the nature of the misconduct and its impact on the trial proceedings." (*Carson*, *supra*, 35 Cal.4th at p. 10.) Cooper refused to appear in court for a pretrial hearing. The purpose of the hearing was for Cooper to receive discovery, which he would need to prepare for trial which was set to begin in around two weeks. Yet, Cooper absented himself entirely, thus obstructing the proceedings.

7

As to the availability and suitability of alternative sanctions, we note that the trial court expressly warned Cooper that his refusal to come to court would result in the court terminating his pro. per. status. Further, the nature of the misconduct—Cooper simply refusing to come to court—limited the court's ability to impose other sanctions or correct the behavior. The trial court cannot chastise, advise, or "hear [the defendant] speak on the matter," when the defendant refuses to present himself to the court. Cooper does not suggest what "alternative sanctions" would have been available in this case.

We are not persuaded that, having already explicitly warned Cooper of the consequence for refusing to come to court, the trial court was required to overlook Cooper's decision to ignore the warning or attempt to address Cooper's behavior in some other fashion. Moreover, our Supreme Court has also stated that a trial court is not required to consider alternative sanctions when a defendant has engaged in intentional obstructionist conduct, as such conduct is an independently sufficient ground for the termination of the right of self-representation. (*Ng*, *supra*, 13 Cal.5th at p. 498; *Carson*, *supra*, 35 Cal.4th at p. 10.)

As to whether Cooper intentionally sought to disrupt and delay the trial (*Carson*, *supra*, 35 Cal.4th at p. 10), the trial court did not make any express findings relevant to the factor. However, in *Carson*, the court explained it was not holding "that an intent to disrupt is a necessary condition. . . . Ultimately, the relevance inheres in the effect of the misconduct on the trial proceedings, not the defendant's purpose." (*Id.* at pp. 10–11.) Here, irrespective of Cooper's intent, his refusal to come to court to receive discovery was disruptive. The trial court could

8

reasonably conclude his conduct would threaten the core integrity of the proceedings if allowed to repeat.

*People v. Kirvin* (2014) 231 Cal.App.4th 1507 (*Kirvin*) is instructive. In *Kirvin*, the defendant argued the trial court abused its discretion by refusing his request to represent himself based on his repeated refusals to come to court, including to meet with a court-appointed expert.[6] (*Kirvin*, at pp. 1513, 1516.) The appellate court rejected the claim, explaining: "The court did not act beyond the 'bounds of reason' in concluding that Defendant's repeated refusal to come to court or obey court orders to meet with others would seriously threaten the core integrity of the trial. An in-custody defendant who wishes to represent himself but demonstrates a pattern of refusing to come to court or to leave his cell when ordered puts the trial court on the horns of a dilemma: That court must either (1) halt the court proceedings whenever the defendant decides to remain in his cell (thereby inconveniencing the jurors and witnesses, and playing havoc with the court's busy calendar), or (2) face the unpleasant prospect of proceeding with trial in the absence of the defendant or anyone representing him (in derogation of the strong statutory and constitutional preference that criminal defendants be present during a trial in which their liberty is on the line). [Citations.] If, as our Supreme Court has noted, a defendant's refusal to sit in the appropriate place in the courtroom is a basis for denying the right to self-representation [citation], the defendant's total absence from the courtroom surely is." (*Id.* at p. 1516.)

---

[6] The defendant in *Kirvin* once refused to leave his jail cell to attend court proceedings and twice refused to go to court to meet with a court-appointed mental health expert. (*Kirvin, supra,* 231 Cal.App.4th at pp. 1512, 1513, 1516.)

Cooper asserts *Kirvin* is distinguishable because the defendant in that case refused to attend court proceedings more than once. While we acknowledge that Cooper did not engage in a similar pattern of refusals to present himself in court, we nevertheless find the *Kirvin* court's reasoning applicable. As in *Kirvin*, Cooper was forewarned that refusing to come to court would result in the court terminating his pro. per. status. Given the warning, which appears to have been more explicit here than it was in *Kirvin*, the trial court was faced with a similar dilemma. Cooper refused to come to court at the very next proceeding after the court granted his *Faretta* motion. The trial court could reasonably interpret Cooper's refusal to come to court as a demonstration of his willingness to flout the court's warnings and to obstruct the proceedings in a manner that would seriously threaten the core integrity of the trial. (See *Carson*, *supra*, 35 Cal.4th at p. 10 ["[T]he defendant's acts need not result in a disruption of the trial. . . . The likely, not the actual, effect of the misconduct should be the primary consideration."].)

Cooper argues that although the trial court warned him about the consequence of refusing to come to court, the court's subsequent Assembly Bill No. 700 advisement contradicted and nullified that warning. However, that advisement did not reference Cooper's right of self-representation, and Cooper had no reason to believe that it superseded the court's prior warnings. The fact that Cooper would waive *other* constitutional rights if he refused to be present, and that proceedings would continue in his absence, did not directly contradict the court's warning that Cooper would forfeit his right of self-representation by refusing to appear. Because we find no conflict between the warnings and advisement, the cases Cooper cites to support his claim that the

consequences of failing to appear were unclear, or that the Assembly Bill No. 700 advisement controls, are inapposite.

Cooper also contends that although at least one court has found a single act of misconduct was sufficient to support the termination of a defendant's pro. per. status where the defendant attempted to intimidate a witness (*People v. Torres* (2020) 47 Cal.App.5th 984, 989–990), his single refusal to appear in court was far less egregious, and "[n]ot every obstructive act will be so flagrant and inconsistent with the integrity and fairness of the trial that immediate termination is appropriate." (*Carson, supra*, 35 Cal.4th at p. 10.)

While a single refusal to attend court proceedings may be misconduct of a different nature than witness intimidation, it is nonetheless inconsistent with the integrity and fairness of a trial, in that it requires the trial court to either halt and delay the proceedings, or proceed in the defendant's absence. Further, we may not disturb the trial court's ruling absent a strong showing of clear abuse. Cooper's prompt failure to heed the trial court's warning and the inconsistency between his requests to proceed to trial and his refusal to appear support the trial court's conclusion that the revocation of Cooper's pro. per. status was necessary to maintain the integrity of proceedings. We conclude that the court's ruling was not outside the bounds of reason.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.